## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOLORES GRANILLO, et al., | Civ. Action No.: 3:16-cv-153-FLW-DEA |
| Plaintiffs, | **CLASS ACTION** |
| v. | |
| FCA US LLC, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     FACTUAL BACKGROUND....................................................................2

        A.      Procedural History....................................................................2

        B.      Plaintiffs Engaged In Extensive Discovery...........................4

        C.      The Parties Engaged In Multiple Mediation Sessions ........5

        D.      Terms of the Settlement Agreement .....................................6

                1.      Cash Payments or Trade-In Vouchers for
                        Transmission-Related Complaints .............................6

                2.      Extended Warranty ........................................................7

        E.      Notification to Settlement Class Members .........................8

        F.      The Release ................................................................................9

III.    ARGUMENT.............................................................................................9

        A.      The Settlement Should Be Preliminarily Approved .........11

        B.      Certification of the Proposed Class for Purposes of
                Settlement Only is Appropriate............................................13

                1.      Numerosity Under Rule 23(a)(1)...............................14

                2.      Commonality Under Rule 23(a)(2)...........................14

                3.      Typicality Under Rule 23(a)(3) .................................16

                4.      Adequacy of Representation Under Rule 23(a)(4) ..............17

                5.      The Requirements of Rule 23(b)(3) Are Met ....................18

        C.      The Court Should Approve the Notice Plan .......................21

        D.      A Final Approval Hearing Should be Scheduled................23

IV.    CONCLUSION.............................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................. 13, 19

*Augustin v. Jablonsky*, 461 F.3d 219 (2d Cir. 2006) ................................................ 21

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ..................................... 16

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) ............................ 22

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ................................... 23

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ........................................................ 22

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ................................................ 10

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .......................................................... 9

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94 (3d
   Cir. 2013) .............................................................................................................. 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................... 13

*Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013
   U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) ......................................... *passim*

*In re Aetna UCR Litig.*, No. 07-3541-KSH, 2013 U.S. Dist. LEXIS
   127691 (D.N.J. Aug. 30, 2013) ........................................................................... 12

*In re Cmty. Bank of N. Virginia*, 622 F.3d 275 (3d Cir. 2010) ............................... 17

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009
   U.S. Dist. LEXIS 119870 (1998) ........................................................................ 21

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768
   (3d Cir. 1995) ....................................................................................................... 13

*In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136 (D.N.J. 2013) ......... 10, 11, 16

*In re Insurance Brokerage Antitrust Litig.,* 579 F.3d 241 (3d Cir. 2009) ............... *19*

*In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330 (N.D. Ohio

2001) ....................................................................................................12

*In re Nat'l Football League Players' Concussion Injury Litig. (In re NFL)*, 301 F.R.D. 191 (E.D. Pa. 2014)....................................................10

*In re Prudential Ins. Co. Sales Litig.,* 148 F.3d 283 (3d Cir. 1998)........................15

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .....................10

*Jones v. Commerce Bancorp, Inc.,* No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144 (D.N.J. July 16, 2007) ...........................................12

*Little Rock School Dist.*, 921 F.2d 1371 (8th Cir. 1990) .........................................10

*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008)..............................20

*Mehling v. New York Life Ins.*, 246 F.R.D. 467 (E.D.Pa.2007)...............................10

*Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393 (E.D. Pa. Apr. 26, 2006)....................................................................17

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ..................................................14

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ............................ 19, 20, 21

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004)..................................................21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)............................................15

*Zimmerman v. Zwicker & Assocs., P.C.*, No. CIV. 09-3905 RMB JS, 2011 WL 65912 (D.N.J. Jan. 10, 2011) ...............................................11

## FEDERAL STATUTES

15 U.S.C. §§ 2301 *et seq.* (Magnusson-Moss Warranty Act) ..................................9

Fed. R. Civ. P. 23 ....................................................................................................19

Fed.  R. Civ. P. 23(a)..............................................................................................32

Fed. R. Civ. P. 23(a)(1)...........................................................................................22

Fed. R. Civ. P. 23(a)(2)...........................................................................................23

Fed. R. Civ. P. 23(a)(3) ...........................................................................24

Fed. R. Civ. P. 23(a)(4) ...........................................................................25

Fed. R. Civ. P. 23(b)(3) ..................................................................... *passim*

Fed. R. Civ. P. 23(c)(2)(B) ................................................................ 30, 31

Fed. R. Civ. P. 23(e) .................................................................... 19, 30, 31

Fed. R. Civ. P. 23(e)(1) ...........................................................................18

Fed. R. Civ. P. 23(e)(2) ...........................................................................18

## STATE STATUTES

28 U.S.C. § 1715 (Class Action Fairness Act) .......................................17

Bus. & Comm. Code §§ 17.41 *et seq.* (Texas Deceptive Practices Act)..................9

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL) .....................9

Cal. Bus. & Prof. Code §§ 17500 *et seq.*
(False Advertising Law (FAL))................................................................9

Cal. Civ. §§ 1750 *et seq.* (Cons. Legal Remedies Act (CLRA)).............................9

Cal. Civ. Code §§ 1790-1795.8 *et seq.*
(Song-Beverly Consumer Warranty Act)................................................9

Conn. Gen. Stat. 735a (Conn. Deceptive Trade Practices Act)...............................9

Ks. Stat. Ann. §§ 50-623 *et seq.* (Kansas Con. Protection Act (KCPA))..................9

N.J.S.A. 56:8-2 (Consumer Fraud Act) ...................................................9

N.Y. Gen. Bus. Law § 349 ................................................................9

N.Y. Gen. Bus. Law § 350 ................................................................9

RCW 198.86 (Wash. Cons. Protection Act) ................................................9

**SECONDARY AUTHORITIES**

Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth (2004) ............................... 30, 31

Newberg on Class Actions § 11:41.........................................................................18

## I.    INTRODUCTION

After two-and-a-half years of litigation, the Parties have resolved this consumer class action on behalf of current owners and lessees of new vehicles manufactured by Defendant FCA US LLC ("FCA US") equipped with the 9 Speed ZF 9HP Automatic Transmission ("Class Vehicles").[1] Under the Settlement, all Class Members will receive an extended warranty, and those who made at least three (3) qualifiying Transmission-Related Complaints—complaints of certain symptoms made directly to FCA US dealers—may receive cash payments of up to $2,000, or a voucher for a trade-in up to $4,000.[2]  These cash payments will compensate Class Members even though they did not incur out-of-pocket costs for warranty repairs, which makes this settlement distinct from other types of settlements in which the primary benefit is reimbursement.

A third-party claims administrator will notify Class Members of the proposed Settlement and its benefits through a direct mailing, including a toll-free number and a Settlement website that will post all Settlement documents for review.

---

[1] Class Vehicles include only the following models and model years: 2014-2015 Jeep Cherokee; 2015 Jeep Renegade; 2015 Chrysler 200; and 2015 Promaster City.

[2] Capitalized terms used herein have the same meaning as the defined terms in the Settlement Agreement attached to the Declaration of Jordan Lurie as Exhibit 1.

This Settlement, which followed two mediations guided by the Honorable Edward A. Infante, a former federal district judge and an experienced and highly regarded mediator, is well within the range of reasonableness for preliminary approval. Plaintiffs' counsel negotiated the relief after conducting a thorough investigation of the claims at issue, which included substantial discovery and analysis of the defect by an expert. Moreover, this Settlement will deliver prompt relief to Class Members who would otherwise wait years if litigation continued and may no longer have possession of their vehicles by the time litigation concludes. The settlement reflects a vigorous negotiation of terms, resolving the matter approximately a year after the first mediation.

Plaintiffs therefore respectfully request that this Court grant their Unopposed Motion for Preliminary Approval of the Class Action Settlement. Granting the motion will allow the Parties to proceed with the proposed notice plan and allow Class Members to take part in the Settlement during the months leading up to a final fairness hearing.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

This case arises out of an alleged defect with the 9 Speed ZF 9HP Automatic Transmission ("ZF 9HP").  The ZF 9HP was designed to integrate the best attributes of traditional manual and automatic transmissions for better performance

and fuel efficiency, but the transmission allegedly caused rough and erratic shifting and loud noises during shifting.

Plaintiffs Desiree Nava and Dolores and Albert Granillo own Jeep Cherokees, purchased new and equipped with the ZF 9HP.  Plaintiffs experienced transmission problems during the first year of driving. Each Plaintiff complained to an FCA dealer about symptoms of the alleged defect; the Granillos complained about a clunky noise and problems shifting, and Ms. Nava complained about shuddering, jerking, and hesitating before accelerating from a stop.  In response to their complaints, FCA US dealers updated the software on the powertrain control module and transmission control module in each Plaintiff's vehicle.

These repair attempts did not eliminate their transmission problems, and Plaintiffs filed this class action lawsuit on July 28, 2015, in the California Superior Court for the County of San Bernardino. FCA US removed the case to the USDC Central District of California on September 30, 2015, then filed a Motion to Dismiss and, concurrently, a Motion to Transfer to the District of New Jersey, where an earlier filed class action, *Oquendo v. Chrysler Group LLC (n/k/a FCA US LLC)*, No. 15-5056 (D.N.J.), was pending (and subsequently dismissed).

On January 11, 2016, the matter was transferred to the District of New Jersey, and FCA US refiled its Motion to Dismiss on January 21, 2016. The Court granted the Motion in part, with leave to amend the complaint. FCA US stipulated

to stay the action pending mediation, rather than have Plaintiffs amend their complaint.

### B. Plaintiffs Engaged In Extensive Discovery

Plaintiffs investigated their claims extensively. Before filing the Complaint, Plaintiffs' counsel inspected Plaintiffs' vehicles, documented their problems, interviewed other putative Class Members, and researched publicly available materials to determine the extent to which the problems affected the putative Class, as well as FCA US' knowledge of the defect alleged.

After filing, the Parties propounded and responded to discovery requests. Plaintiffs reviewed over 5,000 pages produced by FCA US to date, including original and revised Technical Service Bulletins addressing the relevant symptoms and owners' and warranty manuals for each of the Class Vehicles. In addition, Plaintiffs' counsel continued to respond to inquiries from putative Class Members and investigate their complaints. Plaintiffs also retained an expert to inspect the ZF 9HPs and analyze the relevant documents. The expert stated that the alleged defect resulted from a malfunction in the ZF 9HP's adaptive learning software.

FCA US has been trying to fix the problem since at least 2013 by issuing Technical Service Bulletins ("TSBs"), including recommendations to update the software for the Transmission Control Module ("TCM"). As part of two Customer Satisfaction Notices ("CSNs") issued to address performance concerns in certain

2014-2015 Jeep Cherokee and 2015 Chrysler 200 vehicles, FCA US implemented repair procedures for those vehicles to prevent problems originating in the TCM and the Powertrain Control Module ("PCM").  FCA has averred that the problems Class Members experienced relate to performance characteristics of the vehicle rather than a defect.

### C.      The Parties Engaged In Multiple Mediation Sessions

On September 9, 2016, following negotiations by the Parties, the Court issued an order staying proceedings pending mediation.

On November 15, 2016, the Parties engaged in a vigorous day long mediation in which no agreement could be reached on the terms of compensation to the Class.  Plaintiffs then filed a motion to transfer this case back to the Central District of California. On May 25, 2017, the Magistrate Judge directed the parties to return to mediation, continued the stay pending further mediation, and terminated without prejudice Plaintiffs' motion to transfer. On September 26, 2017, the Parties returned to mediation with the Hon. Infante, which resulted in a Class-wide settlement. The terms of this Settlement have since been memorialized in the Settlement Agreement.

After they agreed on the structure and material terms for settlement of the Class claims, the Parties negotiated and ultimately agreed upon an appropriate request for incentive awards and Plaintiffs' attorneys' fees and expenses. All the

terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides.

### D.      Terms of the Settlement Agreement

If approved, the Settlement will provide to all current or former owners or lessors of Class Vehicles (as identified in detail in the Settlement Agreement itself) purchased or leased in the United States substantial benefits that squarely address the issues raised in this litigation. This Settlement Agreement resolves Plaintiffs' allegations, which FCA US denies, that FCA US sold and leased Class Vehicles without telling consumers about a safety-related defect in the ZF 9HP.

Under the Settlement, FCA US agrees to compensate Class Members for having made multiple Transmission-Related Complaints and extend warranty coverage so as to prevent out-of-pocket costs for ZF 9HP problems. Specifically, FCA US agrees to the following:

### 1.      Cash Payments or Trade-In Vouchers for Transmission-Related Complaints

Class Members who can demonstrate three (3) or more Transmission-Related Complaints made prior to the Notice Date are eligible to receive, at the Class Member's election, either (1) a cash payment from FCA US, or (2) a trade-in voucher to be used toward the purchase of a new FCA US vehicle, subject to the conditions set forth in this Section.  (Settlement Agreement ¶ III(A).) The amount

of compensation is set according to the following schedule, with the maximum

amount capped at $2,000 in cash or a trade-in voucher valued at $4,000.

| Number of Transmission-Related Complaints | Cash Payment | Trade-In Voucher Value |
|---|---|---|
| 3 | $400 | $1,000 |
| 4-5 | $800 | $2,000 |
| 6 or more | $2,000 | $4,000 |

Additional Transmission-Related Complaints made to an FCA US

Dealership after Class Notice is mailed, but before the end of the Claim Period,

may be counted for the purposes of obtaining a cash payment or trade-in voucher,

but only for those who have already had three (3) pre-notice Transmission-Related

Complaints. The subsequent complaints count only as follows:  (i) any documented

Transmission-Related Complaint that an FCA US Dealership verifies in writing is

a condition it was able to reproduce or otherwise attest to be valid; and (ii) one

documented but unverified Transmission-Related Complaint made to an authorized

FCA US Dealership. (Settlement Agreement ¶ III(A)(1).)

### 2. Extended Warranty

Beginning on the first day after the Effective Date, FCA US agrees to extend

the warranty on the ZF 9HP in the Class Vehicles to 6 years or 100,000 miles on

the odometer, whichever occurs first, calculated from the date the vehicle was first

delivered.  Except for the durational limits, the terms, conditions and exclusions of

the Powertrain Limited Warranty that covers the Class Vehicles shall apply.  FCA

US shall provide notice to FCA US Dealerships of the extended warranty.

(Settlement Agreement ¶ III(B).)

> **E.**        **Notification to Settlement Class Members**

The Settlement Agreement contains a comprehensive notice plan, to be paid

for by FCA US and administered by a third-party administrator, Dahl

Administration. Class Members will be notified by direct mail. Dahl will identify

Class Members based on the contact information provided by FCA US and will

send the notice to them by first-class mail. Returned mail will be re-sent by Dahl

following a search for an updated address.  In addition, Dahl will set up a dedicated

website that will include the notice, claim form, settlement agreement, and other

relevant documents. Lead Class Counsel will also provide a link to the settlement

website on their respective law firms' websites.

Notice will be sent within thirty (30) days after entry of the Court's Order

preliminarily approving this proposed Settlement. FCA US has agreed to provide

notice of the Settlement to the appropriate state and federal officials, as required by

the Class Action Fairness Act, 28 U.S.C. § 1715.  The Settlement Agreement also

accounts for any Class Members who wish to object or exclude themselves from

the Settlement. Any such request must be postmarked within forty-five (45) days

after the mailing of notice. The Settlement Agreement requires that any objection

or opt-out request contain sufficient information to demonstrate reasonably that the submission is made by a person who actually has standing as a Class Member.

### F.    The Release

In exchange for the foregoing and subject to the Court's approval, Class Members who do not timely exclude themselves will be bound by a release applicable to all claims arising out of or relating to the claims that were asserted in the Complaint. The Released Claims will extend to FCA US and their related entities and persons. The Released Claims expressly exclude any claims for death, personal injury, and property damage other than damage to the Class Vehicle. The Settlement will also result in the dismissal of this case with prejudice.

## III.   ARGUMENT

Before a settlement of a class action can receive final approval, the Court must determine that it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2). The Court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See* Fed. R. Civ. P. 23(e)(1). The ultimate approval of a class action settlement depends on "whether the settlement is fair, adequate, and reasonable." *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975).

At this preliminary stage, however, "the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other

obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. New York Life Ins*., 246 F.R.D. 467, 472 (E.D.Pa.2007) (citations omitted)).[3] As one court has stated, the purpose of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). Under Rule 23, a settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *In re NFL*, 301 F.R.D. at 198.

This approach is consistent with the principle that "settlement of litigation is especially favored by courts in the class action setting." *In re Insurance Brokerage*

---

[3] "[A] presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors." *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. 136, 144 (D.N.J. 2013) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)). As the leading commentator on class actions has noted, courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11:41; *see also Little Rock School Dist.,* 921 F.2d 1371, 1391 (8th Cir. 1990) (stating that class action settlement agreements "are presumptively valid").

*Antitrust Litig.,* 297 F.R.D. 136, at 144 (D.N.J. 2013). Because there are no "obvious deficiencies" in the Settlement Agreement, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are readily satisfied here. Plaintiffs respectfully submit that this Settlement is fair, adequate, and reasonable; that the requirements for final approval will be satisfied; and that Class Members will be provided with notice in a manner that satisfies the requirements of due process and Federal Rule of Civil Procedure 23(e). Therefore, Plaintiffs respectfully request that this Court enter the proposed order granting preliminary approval, which will: (i) grant preliminary approval of the proposed settlement; (ii) certify the Class pursuant to Federal Rule of Civil Procedure 23(b)(3); (iii) schedule a final approval hearing to consider final approval; and (iv) direct that notice of the proposed Settlement and final approval hearing be provided to Class Members.

### A.    The Settlement Should Be Preliminarily Approved

Unlike final approval, "[p]reliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Zimmerman v. Zwicker & Assocs., P.*C., No. CIV. 09-3905 RMB JS, 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011). At the preliminary approval stage, therefore, the court simply conducts "a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *In*

11

*re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001).

In determining whether the proposed settlement falls within the "range of reasonableness," district courts within the Third Circuit typically consider factors such as: (i) whether the negotiations occurred at arm's length; (ii) whether there was sufficient discovery; and (iii) whether the proponents of the settlement are experienced in similar litigation. *Jones v. Commerce Bancorp, Inc.*, No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144, at *5 (D.N.J. July 16, 2007); *see also*, *In re Aetna UCR Litig.*, No. 07-3541-KSH, 2013 U.S. Dist. LEXIS 127691, at *44 (D.N.J. Aug. 30, 2013) (finding that preliminary approval should be granted "unless a proposed settlement is obviously deficient . . . . and 'where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies and the settlement falls within the range of reason.'" (internal citations omitted)).

In light of these factors, the criteria for granting preliminary approval of this complex class action are met. The Settlement is the result of extensive, arm's-length negotiations between experienced counsel, mediated by the well-regarded and experienced Honorable Edward A. Infante (Ret.). Prior to the mediation, Plaintiffs' counsel extensively investigated the disputed claims and reviewed thousands of pages produced by FCA.

While no resolution was reached at the initial mediation, the Parties,

following further litigation, set a second mediation, where they reached an understanding regarding the material terms of the Settlement. Negotiation continued over specific points, and the Court records reflects several requests for adjournments, reflecting, in part, counsel's interest in advocating for the class. (*See* Docket Entry 79, 81, reflecting negotiation over specific points in the settlement documents and class notice.) Counsel for both parties believe the Settlement is in the best interests of their respective clients. Settlement will also remove the uncertainties and risks to the Parties from proceeding further in the litigation. For these reasons, preliminary approval should be granted.

### B.    Certification of the Proposed Class for Purposes of Settlement Only is Appropriate

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). Accordingly, Plaintiffs seek the conditional certification of the Class set forth above.

To be certified, the "[s]ettlement [c]lass[] must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirement." *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 778 (3d Cir. 1995). Here,

13

Plaintiffs seek certification of the Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met for purposes of settlement in this case.

### 1.   Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the [numerosity requirement] of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) (citation omitted).

The Complaint alleges, and FCA US does not dispute, that tens of thousands of Class Vehicles were sold throughout the United States during the Class Period. Therefore, the numerosity requirement has been met.

### 2.   Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims

of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do.").

In this case, there are numerous common questions of law and fact, such as whether: (1) the Class Vehicles suffer from a uniform design defect that causes the ZF 9HP to engage in rough, delayed, or sudden shifting, cause a grinding noise during shifting, have hard gear engagement, and/or cause reduced power when the vehicle shifts into gear; (2) FCA US had a duty to disclose this alleged defect to consumers; (3) these alleged ZF 9HP problems pose an unreasonable safety concern; and (4) Plaintiffs have actionable claims. Commonality is, therefore, satisfied. *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *12-13 (D.N.J. Mar. 22, 2013) ("Several common questions of law and fact exist in this case, including whether the transmissions in the Class Vehicles suffered from a design defect, whether Volvo had a duty to disclose the alleged defect, whether the warranty limitations on Class Vehicles are

15

unconscionable or otherwise unenforceable, and whether Plaintiffs have actionable claims.").

### 3.     Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 141 (3d Cir. 1998). "As with numerosity, the Third Circuit has 'set a low threshold' for satisfying typicality, holding that '[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established....'" *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. 136, 149 (D.N.J. 2013) (alternations in original) (citation omitted).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by FCA US related to the design, manufacture, and sale of the allegedly defective Class Vehicles, including its failure to disclose the alleged defect. *See Henderson,* 2013 U.S. Dist. LEXIS 46291, at *14 (typicality satisfied where "the claims made by the named Plaintiffs and those made on behalf of Settlement Class Members arise out of the same alleged conduct by Volvo – namely, Volvo's design, manufacture and sale of the allegedly defective Class Vehicles and Volvo's alleged failure to

disclose the defect."). This requirement is, likewise, met here.

### 4.    Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining the adequacy of representation, the court should "'evaluate [both] the named plaintiffs' and … counsel's ability to fairly and adequately represent class interests.'" *Gotthelf v. Toyota Motor Sales, U.S.A., Inc*., 525 Fed. Appx. 94, 100-101 (3d Cir. 2013) (alterations in original; citation omitted)). In doing so, "the district court ensures that no conflict of interest exists between the named plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named plaintiffs have the ability and incentive to vigorously represent the interests of the class." *Id.* at 101 (citing *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291 (3d Cir. 2010)).

In addressing the adequacy of the proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006). Here, all of the Representative Plaintiffs are adequate because they purchased Class Vehicles subject to the Settlement

17

Agreement and were allegedly injured in the same manner based on the same alleged defect as absent Class Members. They have also actively participated in the litigation of this case and been in regular communication with their attorneys regarding these proceedings.

The Settlement Agreement designates Capstone Law APC ("Capstone"), an experienced and respected class action firm, as Lead Class Counsel with the Law Office of Howard Gutman as co-Class Counsel.  Capstone's attorneys have invested considerable time and resources into the prosecution of this action. They have a wealth of experience in litigating complex class actions and were able to negotiate an outstanding settlement for the Class.  (*See* Firm Resume, attached as Ex. 2 to the Lurie Declaration.) Co-counsel Howard Gutman has handled automobile warranty claims for over 20 years.  Based on the results achieved here, the Court should appoint these attorneys as Class Counsel for the Class and determine that Rule 23(a)'s adequacy requirement is satisfied.

## 5.     The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Class under Rule 23(b)(3), which has two components: predominance and superiority. "Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the

class predominate over those affecting only individual class members." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc) (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems... for the proposal is that there be no trial.").

The Third Circuit has reiterated that the focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the focus would be whether FCA US is liable to the Class under the claims pled in the SAC, based on the alleged existence of a design defect and FCA US' related conduct.

Specifically, the primary issues would be whether FCA US is liable for distributing Class Vehicles with a defectively designed ZF 9HP and FCA US' alleged failure to disclose the defect. Both issues are subject to "generalized

proof," and reflect a "question that is common to all class members." *See Henderson,* 2013 U.S. Dist. LEXIS 46291, at 17-18. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). Superiority requires the Court to consider whether or not "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." *Sullivan*, 667 F.3d at 296 (citations omitted). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. *McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448, 457 (D.N.J. 2008). These factors include: "(i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action." *Id*. (quoting Fed. R. Civ. P. 23(b)(3)).

The Settlement Agreement provides Class Members with prompt, predictable, and certain relief, with well-defined administrative procedures to ensure due process. These include the right of any Class Members who are dissatisfied with the Settlement to object or to exclude themselves. The Settlement

also would relieve the substantial judicial burdens that would be caused by

repeated adjudication of the same issues in thousands of individualized trials

against FCA US. To litigate the claims of the potential Class Members on an

individual basis would be economically infeasible and result in "needless

duplication of effort." *See Henderson*, 2013 U.S. Dist. LEXIS 46291, at *19

(citation omitted). And because the Parties seek to resolve this case through a

settlement, any manageability issues that could have arisen at trial are

marginalized. *Sullivan*, 667 F.3d 273, 302-03 (3d Cir. 2011). Therefore, "class

status here is not only the superior means, but probably the only feasible [way] . . .

to establish liability and perhaps damages." *Augustin v. Jablonsky,* 461 F.3d 219,

229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are

satisfied, certification of the proposed Settlement Class is appropriate.

### C.     The Court Should Approve the Notice Plan

Under Federal Rule of Civil Procedure 23(e), class members who would be

bound by a settlement are entitled to reasonable notice before the settlement is

approved. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004).

"[T]he Court must direct to class members the best notice practicable under the

circumstances, including individual notice to all members who can be identified

through reasonable efforts." *See In re Countrywide Fin. Corp. Customer Data Sec.*

*Breach Litig*., 2009 U.S. Dist. LEXIS 119870, at *42-43 (1998) (citing Fed. R.

Civ. P. 23(c)(2)(B)). In order to satisfy these standards and "comport with the

requirements of due process, notice must be 'reasonably calculated to reach

interested parties.'" *Id.* at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir.

2008)); *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1176 (8th Cir. 1995)

("Notice of a settlement proposal need only be as directed by the district

court . . . and reasonable enough to satisfy due process.").

The notice plan described above and set forth in Section IV.B. of the

Settlement Agreement provides the best notice practicable under the

circumstances. FCA US will supply the addresses of Class Members, current

owners and lessees of Class Vehicles throughout the United States, to third-party

administrator Dahl Administration.  Dahl will implement direct mail notification.

Notice of the Settlement will also be available on a dedicated website created by

Dahl. The respective Class Counsel law firms' websites will also post information

about the settlement. *Henderson, supra,* is instructive in this regard. In that case,

Judge Cecchi found that a substantially similar notice plan – which included direct

mail notification to identifiable class members, a dedicated settlement website, and

toll-free telephone number – satisfied Federal Rule of Civil Procedure 23(c)(2)(B)

and 23(e). *Henderson*, 2013 U.S. Dist. LEXIS 46291, at *37-39. The same

conclusion should be drawn here.

Finally, the content and substance of the proposed notice, which is attached as Exhibit A-1 and A-3 to the Settlement Agreement, will include all necessary legal requirements and provide a comprehensive explanation of the Settlement in simple layman's terms. *See* Fed. R. Civ. P. 23(c)(2)(B). Accordingly, the Parties respectfully request that the Court approve the notice plan.

### D.    A Final Approval Hearing Should be Scheduled

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses, and an incentive award for the Representative Plaintiffs, consider any objections and exclusions, and determine whether to dismiss this action with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig. Fourth*, § 30.44 (2004); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 600 (3d Cir. 2010). Plaintiffs respectfully request that the final approval hearing be scheduled for approximately five (5) months from the date the preliminary approval order is entered.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) conditionally certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) for the purpose of effectuating a class action settlement; (2) preliminarily approving the Settlement; (3) directing notice

to Settlement Class Members consistent with the notice plan; (4) appointing

Capstone Law and Howard Gutman as Class Counsel; and (4) scheduling a final

approval hearing. A proposed order granting this relief is submitted with this

memorandum.

Dated:  February 9, 2018                              Respectfully submitted,

                                                      **Capstone Law APC**

                                                      By: */s/* Jordan L. Lurie
                                                           Jordan L. Lurie

                                                      Tarek H. Zohdy
                                                      Cody R. Padgett
                                                      Karen L. Wallace
                                                      **CAPSTONE LAW APC**
                                                      1875 Century Park East, Suite 1000
                                                      Los Angeles, CA, 90067
                                                      jordan.lurie@capstonelawyers.com
                                                      tarek.zohdy@capstonelawyers.com
                                                      cody.padgett@capstonelawyers.com
                                                      karen.wallace@capstonelawyers.com

                                                      Howard Gutman
                                                      230 Route 206, Suite 307
                                                      Flanders, New Jersey 07836
                                                      howardgutman@aol.com

                                                      *Attorneys for Plaintiffs and the*
                                                      *Proposed Settlement Class*