**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ———————————————————— | : |  |
| Dolores GRANILLO, Albert Granillo, and | : |  |
| Desiree Nava, individually, and on behalf of | : |  |
| a class of similarly situated individuals, | : |  |
|  | : |  |
| Plaintiffs, | : | Civil Action No. 16-153 (FLW) (DEA) |
|  | : |  |
| v. | : |  |
|  | : | **OPINION** |
| FCA US LLC, a Delaware Limited Liability | : |  |
| Company, | : |  |
|  | : |  |
| Defendant. | : |  |
| ———————————————————— | : |  |

**WOLFSON, United States District Judge:**

Before the Court is a Motion for Leave to File an Amicus Curiae Brief by the Center for

Auto Safety ("CAS") and Public Citizen, Inc. (collectively, "Proposed Amici" or "Consumer

Groups"), as well as a separate Motion to Intervene by Ronald LaRoe and Melody LaRoe ("the

LaRoes" or "Proposed Intervenors"). Both Proposed Amici and Proposed Intervenors' motions

concern an unopposed Motion for Preliminary Approval of a Class Settlement[1] filed by Lead

Plaintiffs Dolores Granillo, Albert Granillo, and Desiree Nava, individually and on behalf of a

class of similarly situated individuals ("Plaintiffs"), to resolve claims related to an alleged defect

in an automobile part that Defendant FCA US, LCC ("Defendant" or "FCA") produced.

Presently, Consumer Groups seek to submit an amicus brief challenging certain

provisions in the proposed settlement agreement related to the rights of class members who may

---

[1] The motion, which will be granted, is addressed in a separate order.

object to the settlement. Defendants and Plaintiffs both oppose Consumer Groups' motion. In addition, the LaRoes, who are plaintiffs in a separate putative class action against FCA in the United States District Court for the District of Kansas, seek to intervene because, they assert, the proposed settlement will impact their pending litigation. Defendant opposes this motion.

For the reasons that follow, Consumer Groups' Motion for Leave to File an Amicus Curiae Brief is **DENIED** and the LaRoes' Motion to Intervene is also **DENIED.**

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of an alleged defect in a car part that FCA produced, the 9 Speed ZF 9HP Automatic Transmission ("ZF 9HP"), which allegedly caused rough and erratic shifting and loud noises during shifting. The Court set out the facts of this dispute in detail in its previous opinion, *Granillo v. FCA US LLC,* No. 16-153, 2016 WL 9405772 (D.N.J. Aug. 29, 2016).

Plaintiffs filed this putative class action lawsuit on July 28, 2015, in the California Superior Court for the County of San Bernardino.[2] FCA removed the case to the United States District Court for the Central District of California on September 30, 2015; FCA then filed a motion to dismiss or to transfer to the District of New Jersey, where an earlier filed class action, *Oquendo v. Chrysler Group LLC (n/k/a FCA US LLC)*, No. 15-5056 (D.N.J.), was pending (and subsequently dismissed).

---

[2] Plaintiffs brought five causes of action against Defendant: (1) Violation of California's Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1750, *et seq.*; (2) Violation of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Cal. Civ. Code §§ 1792, 1791.1, *et seq.*; (4) Breach of Implied and Express Warranty under the Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2303, *et seq.*; and (5) Breach of Express Warranty under Cal. Com. Code § 2313.

On January 11, 2016, the matter was transferred to this Court, and FCA refiled its motion

to dismiss on January 21, 2016. The Court granted the motion in part, but granted Plaintiffs leave

to amend the complaint. As relevant here, the Court found that Plaintiffs' surviving claims were

viable because they alleged that FCA withheld material information concerning the symptoms of

the alleged defect.[3] *See Granillo*, 2016 WL 9405772, at *7. FCA stipulated to stay the action

pending mediation; Plaintiffs did not amend their complaint. ECF No. 85-1 at 3-4.

After "extensive discovery" and "multiple mediation sessions," the parties reached a

settlement agreement ("Proposed Settlement") on September 26, 2017, which was "the result of

extensive, adversarial, and arm's-length negotiations between experienced counsel for both

sides." *Id.* at 6. According to the parties, the Proposed Settlement resolves Plaintiffs'

allegations, which FCA denies, that FCA sold and leased vehicles without informing

consumers about a safety-related defect in the ZF 9HP. *Id.* Under the Proposed Settlement,

FCA agrees to compensate Class Members for having made multiple Transmission-Related

---

[3] Specifically, the Court ruled as follows:

> Plaintiffs' CLRA claim (Count I) is dismissed without prejudice; Plaintiffs' breach
> of express warranty claim under Cal. Com. Code § 2313 (Count V) is dismissed
> without prejudice, except it is dismissed with prejudice insofar as it arises from
> Defendant's alleged failure to repair or replace a component suffering from a design
> defect; Plaintiffs' MMWA claim (Count IV) arising from their breach of express
> warranty claim is dismissed without prejudice, except it is dismissed with prejudice
> insofar as it is based on Defendant's alleged failure to repair or replace a component
> with a design defect; Plaintiffs' MMWA claim (Count IV) arising from their Song-
> Beverly Act breach of implied warranty claim is dismissed with prejudice only as
> to those Class members who purchased their Class Vehicles outside of California;
> Plaintiffs' UCL claim (Count II) for fraudulent business practices is dismissed
> without prejudice; and Plaintiffs' remaining UCL claim (Count II) is dismissed with
> prejudice to the extent that Plaintiffs seek to enjoin Defendant to perform a recall
> of the Class Vehicles "pursuant to applicable NHTSA guidelines." Plaintiffs'
> remaining claims survive.

*Granillo*, 2016 WL 9405772, at *20.

Complaints and to extend warranty coverage so as to prevent out-of-pocket costs for ZF 9HP problems. *Id.*

Proposed Amici are non-profit consumer advocacy organizations "with strong interests in auto safety and consumer protection more generally." ECF No. 88-2 at 1. CAS has "a mission to improve the safety, efficiency, reliability, and cost to consumers of vehicles," and advocates before the Department of Transportation, Congress, and in courts "to help reduce motor vehicle deaths, injuries, and crashes." "*Id.* Public Citizen "works before Congress, administrative agencies, and courts for the enactment and enforcement of laws protecting consumers, workers, and the general public." *Id* at 2.

Relevant to Proposed Amici's motion, the Proposed Settlement contains two provisions that impose certain requirements on potential objectors to the final settlement. These provisions provide,

> 1. The Parties will request that the Court enter an Order requiring … any Class Member objecting to the Settlement Agreement shall provide a detailed list of any other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court, whether state, federal, or otherwise, in the United States in the previous five (5) years. If the Class Member or his/her/its counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she/it shall affirmatively so state in the written materials provided in connection with the objection.

> 2. The Parties will request that the Court enter an Order providing that the filing of an objection allows Class Counsel or counsel for FCA US to notice such objecting person for, and take, his/her/its deposition, consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objector to make himself/herself/itself available for a deposition or to comply with expedited discovery requests may result in the Court striking the objection and otherwise denying that person the opportunity to be heard. The Court may tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for improper purpose.

ECF No. 85-2, Exh. 1 at 13-14. Consumer Groups assert that these provisions, if approved,

"would conflict with class action, discovery, and due process principles, and they would have an

inappropriate chilling effect on absent class members who might otherwise play a vital role in

advising the Court on shortcomings of the proposed settlement." ECF No. 88-2 at 3. As such,

they opine that the Court should deny the unopposed motion to preliminarily approve the

settlement. *Id.* at 4.

In addition to the suit before this Court, the LaRoes are currently litigants in a similar

putative class action suit pending in United States District Court for the District of Kansas,

*LaRoe, et al. v. FCA US LLC, et al.*, No. 17-cv-2487. There, the LaRoes allege that they bought a

2014 Jeep Cherokee with the allegedly defective ZF 9-speed automatic transmission.[4] ECF No.

100-4 at ¶ 5. There is no dispute that the LaRoes are members of the proposed *Granillo* class.[5]

Unlike Plaintiffs here, however, the LaRoes identify a specific defect on which they intended to

base their claims: "a wire harness crimp transaxle range sensor wire harness ("Wire Harness"), a

critical component to the safe operation of at least 320,000 vehicles." *Id.* Indeed, in this case, the

Court has found that Plaintiffs did not "specifically identify the defect in the ZF 9HP Automatic

Transmission." *See Granillo*, 2016 WL 9405772, at *7. The LaRoes assert that these claims are

fundamentally different from those in *Granillo*, because "[t]he *Granillo* case is about problems

with *shifting* in the ZF 9-Speed transmissions," and asks for "monetary compensation based on

---

[4] In this action, the LaRoes brought claims for 1) Breach of Implied and Express Warranty under the Magnuson-Moss Warranty Act, (15 U.S.C. § 2303, 2) Breach of the Implied Warranty of Merchantability, and 3) Violations of the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq. See LaRoe*, No. 17-cv-2487, ECF No. 1-1 at ¶¶ 52-92.

[5] The class is defined as "All individuals who purchased or leased new, in the United States, for family, household, or personal use, and still own, one of the following vehicles equipped with a 9 Speed ZF 9HP Automatic Transmission: model-years 2014 and 2015 Jeep Cherokee; model-year 2015 Jeep Renegade; model-year 2015 Chrysler 200; and model-year 2015 ProMaster City." ECF No. 85-3 at ¶ 5.

how frequently a customer complained and what amounts to a 1 or 2 year warranty extension,"

whereas "the LaRoe case is *exclusively* focused on the Transaxle Range Sensor Wire Harness,"

and asks FCA "to physically replace a defective part with a new non-defective version of the

part, in every one of the Affected Vehicles within the safety recall at issue."[6] ECF No. 100-1 at

9-10.

Proposed Intervenors take issue with specific provisions in the Proposed Settlement.

They first assert that under the Proposed Settlement, only those class members who made at least

three "Transmission Related Complaints" would be entitled to any form of monetary

compensation, *see* ECF No. 85-2, Exh. 1 at 6-7, which, according to Proposed Intervenors,

excludes "the Wire Harness claims brought in *LaRoe*." ECF No. 100-1 at 6. Proposed

Intervenors also object to the following language in the "Release" section of the Proposed

Settlement, which, they contend, is overbroad in the types of claims it releases. *Id.* This section

releases

> all Claims of whatever type or description, arising out of, that may have arisen as a
> result of, or which could have been brought based on, any of the facts, acts, events,
> transactions, occurrences, courses of conduct, representations, omissions,
> circumstances or other matters pleaded in the Second Amended Complaint filed in
> the Litigation.

ECF No. 85-2, Exh. 1 at 15. Proposed Intervenors submit that they have asked Defendant to

stipulate "that the claims in LaRoe would be excluded from the *Granillo* settlement," but

Defendant refused. ECF No. 100-1 at 4. As such, they ask this Court to either (a) provide

---

[6] Despite this assertion, Proposed Intervenors' claims seem to involve the same shifting issues as
in the *Granillo* complaint. *See* ECF No. 100-4 at ¶ 15 ("This defect can cause electrical
resistance to become too high, and when it does, trigger solenoid faults that suddenly and
unexpectedly shift the transmission into neutral during normal operation—without any
warning.").

clarification that the proposed settlement and release in this matter, if approved, will not affect

their claims and the claims of their putative class action, or (b) specifically exclude their claims

from the Release of the proposed settlement in the instant matter. *Id.*

## II.    **DISCUSSION**

### A.  **Motion for Leave to File Amicus Curiae Brief**

There is no rule in the district court governing the appearance of an amicus curiae; as

such, district courts have been guided by the Third Circuit's application of Federal Rule of

Appellate Procedure 29, which governs the appearance of amici in the circuit courts. *U.S. v.*

*Alkaabi,* 223 F.Supp.2d 583, 592 (D.N.J. 2002). In accordance with this rule, courts consider the

following factors in deciding whether to grant amicus status: whether "(1) the amicus curiae has

a 'special interest' in the particular case; (2) the amicus curiae's interest is not represented

competently or at all in the case; (3) the proffered information is timely and useful; and (4) the

petitioner is not partial to a particular outcome in the case." *Prof'l Drug Co. Inc. v. Wyeth Inc.*,

No. 11–5479, 2012 WL 4794587, *1 (D.N.J. 2012) (internal citation omitted). Whether to grant

amicus status is within the "broad discretion of the district court." *Id.* (internal quotation

omitted). However, at the district court level, "the aid of amicus curiae may be less appropriate

than at the appellate level." *Yip v. Pagano*, 606 F.Supp. 1566, 1568 (D.N.J. 1985) *aff'd*, 782 F.2d

1033 (3d Cir. 1986).

The thrust of Proposed Amici's argument as to why their amicus brief is necessary is that

they offer a different "perspective" than any of the parties, as they represent "general consumer-

protection concerns and specific interest in auto safety and reliability, as well as their focus on

consumers' ability to use the civil justice system." ECF No. 104 at 3. They take issue with

provisions in the proposed settlement agreement that pose certain obligations on class members

who may wish to object to the settlement, arguing that these provisions infringe on the due process rights of absent class members. Plaintiffs and Defendant respond that these provisions are necessary to weed out so-called "professional objectors" who "can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements." ECF No. 96 at 7 (citing *In re Merck & Co., Inc.*, No. 05-1151, 2016 WL 4820620, at *2 (D.N.J. Sept. 14, 2016) (internal citation omitted)). Here, the Court finds that three of the four amicus factors weigh against allowing the filing of the proposed amicus brief.

1. Interest in the Case

First, Proposed Amici do not have a special interest in the particular case. When evaluating a potential amici's proffered interest in a case, the court looks to whether its "interests which would be ultimately and directly affected by the court's ruling on the substantive matter before it." *Yip*, 606 F. Supp. at 1568. The potential amici must show more than simply "a generalized interest in all cases" of a similar subject matter. *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999).

Here, Proposed Amici assert an interest in "plaintiffs' unopposed request that the Court impose extreme and unnecessary discovery, disclosure, and sanctions requirements on absent class members who object to the proposed class settlement." ECF No. 88-2 at 1. They claim that these settlement provisions relate to their strong organizational interests in auto safety and consumer protection more generally. Although the Court acknowledges the sincerity of Proposed Amici's concerns, they, nonetheless, do not qualify as "special interests" that would weigh in favor of granting amici status. As Proposed Amici admit, the objected-to provisions do not impact them directly, but instead allegedly affect "absent class members," who are, themselves, capable of objecting to the provisions once the settlement has been preliminarily approved. There

8

is no suggestion by Proposed Amici that these putative class members would not be able to

present objections in this case. Rather, Proposed Amici are consumer groups who regularly file

amicus briefs in cases of similar subject matters, *see id.* at 1-2, to promote consumers' interests.

Indeed, Proposed Amici's interest in filing an amicus brief is precisely the type of generalized

concern that is not, by itself, sufficient to grant amicus status.

Thus, this factor does not support granting Proposed Amici's motion.

### 2. Whether Interest is Competently Represented

In general, courts tend to reject proposed amicus brief when parties are "adequately

represented by competent counsel." *Price v. Corzine*, No. 06-1520, 2006 WL 2252208, at *3

(D.N.J. Aug. 7, 2006). Here, Proposed Amici do not assert an interest that is not already

competently represented by Court-approved class counsel. Proposed Amici object to provisions

of the Proposed Settlement that class counsel has negotiated and approved. Further class counsel

has, in it is brief opposing the present motion, ably explained the purpose behind the at-issue

provisions and why they advance the interests of the putative class members. Moreover, as

already noted, the absent class members that Proposed Amici wish to protect may opt out or

object to the provisions at issue before final approval of the Proposed Settlement.

Thus, the Court finds that this factor also weighs against Proposed Amici's motion.

### 3. Usefulness of Proffered Information

Even with Consumer Groups' peripheral interest in the litigation, courts would be

inclined to accept the amicus brief if it aided in the determination of the issues in a case, as "[t]he

purpose of an *amicus curiae*…is to assist the court in a proceeding." *McDonough v. Horizon*

*Healthcare Servs., Inc.*, No. 09-571, 2014 WL 3396097, at *12 (D.N.J. July 9, 2014), *aff'd sub*

*nom.* 641 F. App'x 146 (3d Cir. 2015) (citing *Yip*, 606 F.Supp. at 1568); *see also Harris v.*

*Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987) (Granting amicus status "may be advisable where third parties can contribute to the court's understanding of the consequences of the settlement proposed by the parties.).

Here, the proposed amicus brief identifies three aspects of the Proposed Settlement that, Proposed Amici contend, conflict with due process and would chill objections: (1) objector discovery requirements, (2) objector disclosure requirements, and (3) the sanctions regime for objectors and their attorneys. *See* ECF No. 88-2 at 3-4. Proposed Amici argue that these provisions pose due process concerns and impose new burdens on objectors. However, the objections outlined in the proposed amicus brief are routinely approved by courts across the country in settlement agreements; they do not come close to posing the constitutional issues of which Proposed Amici warn. Thus, the proposed amicus brief does not contribute to the Court's understanding of the Proposed Settlement and its potential consequences. Below are my reasons.

First, Consumer Groups' amicus brief raises concerns regarding two disclosure requirements that the proposed settlement agreement imposes on objectors. The first would require objectors to provide "a detailed list of any other objections submitted by the objector, or the objector's counsel, to any class action settlements ... in the United States in the previous 5 years," or a statement that no such objections exist, ECF No. 85-2, Exh. 1 at 14, which, according to Proposed Amici, is not related to whether the proposed settlement here is fair, reasonable, and adequate, but rather would "chill" potential objections. They assert that these provisions are, "designed to open objectors to ad hominem attacks, generate inappropriate inquiries into attorney-client relations, or act simply as another trip wire, linked to the threatened denial of a class member's objection." ECF No. 88-2 at 13. The second disclosure provision to which Consumer Groups object would require proposed objectors to state the "legal grounds for

10

the position(s)," which according to Proposed Amici, can intimidate *pro se* class members who lack legal training but nevertheless wish to convey their disagreements with a proposed settlement.

Plaintiffs and Defendant contend that these provisions are relevant to the settlement, and are related to the purpose of impeding "professional objectors." I agree. The provisions are not irrelevant to whether the settlement is "fair, reasonable or adequate," as a professional objector can delay the settlement process and, thus, "undermine the administration of justice." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (Professional objectors "disrupt[ ] settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."); *see also Devlin v. Scardelletti*, 536 U.S. 1, 23 (2002) (Scalia, J., dissenting) (noting that class action settlements are more and more frequently delayed by "'canned' objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests") (quotation omitted). Requiring objectors to provide basic information about the number of class objections they have filed and to state simply the legal basis for their objections is a fair, narrowly tailored provision aimed at deterring the bad faith filings of professional objectors.

The Court is also satisfied that these provisions would not "chill" objectors so as to rise to the level of a due process concern, as these proposed terms are commonly approved in class action settlements. Indeed, courts in this district, have routinely approved the exact terms being challenged here. *See, e.g.*, *Davitt v. Am. Honda Motor Co.*, No. 13-00381, 2014 WL 12756306, at *2 (D.N.J. Nov. 5, 2014) (requiring that objectors "provide a list of all proposed settlements they or their counsel objected to in the last five years" and "explain all legal and factual bases for any objection"); *Sabol v. Hydroxatone LLC*, No. 11-04586, 2013 WL 12161799, at *5 (D.N.J.

Mar. 28, 2013) (requiring objector's notice of intent to object "[c]ontain the number of class

action settlements objected to by the Settlement Class Member in the last three years" and "[a]

detailed statement of the specific legal and factual basis for each and every objection"); *Pro v.*

*Hertz Equip. Rental Corp.*, No. 06-3830, 2013 WL 12157826, at *3 (D.N.J. Mar. 18, 2013)

(same).

Proposed Amici next object to the provision in the proposed settlement that would

require that objectors submit to depositions and other discovery requests. They assert that these

provisions "preapprove" discovery, and would chill objections, regardless of a deposition's

location. *See* ECF No. 88-2 at 8.

However, allowing the parties to take discovery of objectors also does not rise to the level

of a "due process violation." The provision explicitly states that the deposition must be

"consistent with the Federal Rules of Civil Procedure at an agreed-upon location," a requirement

that would, of course, apply to all discovery requests. ECF No. 85-2, Exh. 1 at 15. As such, all

discovery would still be overseen by the Court, and the Court could deny a request that did not

comply with the rules.[7] Indeed, Proposed Amici point to no cases in which courts have found

such provisions to pose constitutional problems; just to the contrary, these provisions have

routinely been approved. *See*, *e.g.*, Settlement Agreement at 28, *Yaeger v. Subaru of Am., Inc.,*

No. 14-4490, (D.N.J. Jan. 4, 2016), ECF No. 49-2 (approving agreement with term authorizing

objector depositions); *Sabol*, 2013 WL 12161799, at *5 (same).

Further, courts across the country have approved such provisions, stating that

depositions of objectors who "have voluntarily inserted themselves into this action…are

_____

[7] Even under the provisions of the Proposed Settlement, an objector remains free to ask the Court
for an exemption from discovery.

relevant and proper." *In re Netflix Privacy Litig.,* No. 11-00379, 2013 WL 6173772, at *5 (N.D. Cal. Nov. 25, 2013); *see also In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D.Cal. 2012) (compelling deposition of objector because he "voluntarily appeared in this litigation by objecting to the…Settlement" and was thus "properly subject to discovery").

Finally, Proposed Amici object to what they phrase as "the extreme, two-part sanctions regime that would attach to the objector requirements." ECF No. 88-2 at 9. The first sanctions provision states that failing to abide by the settlement's discovery obligations "may result in the Court striking the objection and otherwise denying that person the opportunity to be heard." ECF No. 85-2, Exh. 1 at 15. The second allows the Court to "tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for improper purpose." *Id*.

These sanctions are hardly as harsh as Proposed Amici suggest, however. The Court is granted broad latitude to impose discovery sanctions, and it is well within its authority to strike or disregard objections that fail to comply with the settlement's terms. *See In re Cendant Corp. Litig.,* 264 F.3d 201, 252 (3d Cir. 2001) (affirming a district court's striking of an objection because objectors failed to raise it in a timely fashion). The settlement provisions merely restate this authority, so I take no issue with their inclusion. And, as with each of the other challenged provisions, proposed settlement agreements often include such terms. *See, e.g. Sabol*, 2013 WL 12161799 at *5 (informing objectors that court may strike objections for failure to comply with discovery requirements, including the possibility of taxing of costs); *see also In re Sony PS3 "Other OS" Litig.*, No. 10-01811, 2017 WL 5598726, at *4 (N.D. Cal. Nov. 21, 2017) (informing objectors that objections would be waived if not "timely and valid"); *Beaver v. Tarsadia Hotels*, No. 11-01842, 2017 WL 2268853 at *7 (S.D. Cal. May 24, 2017) (informing objectors that court

may strike objections for failure to comply with discovery requirements); *Barron v. Snyder's-Lance, Inc.*, No. 13-62496, 2016 WL 3913571, at \*3 (S.D. Fla. Feb. 12, 2016) (informing objectors of court's right to tax discovery costs against objectors for a frivolous objection and of waiver of objection for untimely submission).

Thus, I find that the proposed objections in the amicus brief are not useful to the Court in deciding the motion for preliminary approval of the settlement. [8]

### 4. Partiality to Particular Outcome

"While the partiality of an amicus is a factor to be considered by a court in deciding whether to allow participation, there is no rule that amici must be totally disinterested." *Alkaabi*, 223 F. Supp. 2d at 592. Here, although Proposed Amici are admittedly partial to "improv[ing] class action settlements" that impact the rights of absent class members, granting amicus status to consumer advocacy groups with similar policy concerns is common. *See id.* (citing *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 131-32 (3d Cir. 2002) (noting that "[p]arties with pecuniary and policy interests have been regularly allowed to appear as *amici* in our courts"). Thus, I do not find that this factor weighs against amicus status.

Nonetheless, because I find that three out of the four factors governing amicus motions weigh against Proposed Amici, their Motion for Leave to File an Amicus Curiae Brief is denied.[9]

### B. Motion to Intervene

I next turn to the LaRoes' Motion to Intervene, which seeks intervention as of right, and, in the alternative, permissive intervention. The LaRoes claim that the sole purpose of their

---

[8] Proposed Amici's repeated reference to *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985) is off base. As *Shutts* makes clear, class members who wish to preserve the rights must be given the opportunity to opt out, which they are given here. *Id*. at 810.
[9] As such, I need not address Defendant's argument that Proposed Amici are objectors disguising themselves as amici to evade standing requirements.

intervention would be to oppose the motion for preliminary approval of the parties' settlement in

an effort to ensure that the claims in their own case will be specifically carved out from the

Granillo release. To that end, the LaRoes ask this Court to either (1) "provide clarification that

the proposed settlement … will not affect their claims and the claims [in] their [own] putative

class action," or (2) "specifically exclude their claims from the Release." ECF No. 100-1 at 4.

       1.   <u>Intervention as of Right</u>

Federal Rule of Civil Procedure 24 provides in pertinent part: "(a) Intervention of Right.

Upon timely application anyone shall be permitted to intervene in an action ... (2) when the

applicant claims an interest relating to the property or transaction which is the subject of the

action and the applicant is so situated that the disposition of the action may as a practical matter

impair or impede the applicant's ability to protect that interest, unless the applicant's interest is

adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2).

It is well-settled that Rule 24(a)(2) requires the following four elements to be met from

the applicant seeking intervention as of right: (1) a timely application for leave to intervene; (2) a

sufficient interest in the litigation; (3) a threat that the interest will be impaired or affected, as a

practical matter, by the disposition of the action; and (4) inadequate representation of the

prospective intervenor's interest by existing parties to the litigation. *Kleissler v. U.S. Forest*

*Service*, 157 F.3d 964, 969 (3d Cir. 1998); *Mountain Top Condo. Ass'n. v. Dave Stabbert Master*

*Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995); *Development Fin. Corp. v. Alpha Hous. &*

*Health Care, Inc.*, 54 F.3d 156, 161-62 (3d Cir. 1995). "In the class action context, the second

and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23

representative litigation. Therefore, when absent class members seek intervention as a matter of

right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and

on the adequacy of representation." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d

Cir.2005).

Here, Proposed Intervenors assert that their intervention is timely, which no party

disputes, and that their interests are not adequately represented by existing parties in the

litigation.[10] I will focus on the latter factor.

Representation will be considered inadequate where, "although the applicant's interests

are similar to those of a party, they diverge sufficiently that the existing party cannot devote

proper attention to the applicant's interests." *Brody v. Spang,* 957 F.2d 1108, 1123 (3d Cir.1992).

Under Third Circuit law, however, because it is assumed that the absent class member seeking

intervention "has the same ultimate objective as a party to the suit…a presumption arises that its

interests are adequately represented." *In re Cmty. Bank*, 418 F.3d at 315 (quoting *Virginia v.*

*Westinghoulcse Elec. Corp.,* 542 F.2d 214, 216 (4th Cir.1976)). In order to overcome the

presumption, the proposed intervenors must demonstrate "adversity of interest, collusion, or

nonfeasance on the part of [Plaintiffs]." *Id.* (citing *Int'l Tank Terminals, Ltd. v. M/V Acadia*

*Forest,* 579 F.2d 964, 967 (5th Cir.1978)).[11]

---

[10] Proposed Intervenors also argue, and Defendants dispute, that they have a sufficient interest in the litigation that will be impaired by the disposition of the action. As these prongs of Rule 24(a)(2) are presumed satisfied in the class action context, I will not address these arguments.
[11] Proposed Intervenors argue that the cases cited by Defendant applied the presumption because intervention was sought *after* the class had been certified, and claim that "the standard is slightly different when intervention is sought *before* certification." ECF No. 113 at 9 n.6. They fail to state what this "slightly different" standard actually is, however. In fact, the statement that courts only apply the presumption of adequate representation after class certification is simply incorrect. *See, e.g., In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 423 & n.10 (3d Cir. 2016) (noting court granted certification motion filed in June 2014, after the motion seeking to intervene had been earlier denied in May 2014 because of failure to "overcome the presumption that the class representatives were adequate"); *DeMarco v. Avalonbay Cmtys., Inc.*, 2016 WL 5934704, \*\*2, 6 (D.N.J. 2016) (applying presumption and denying motion to intervene before class was certified).

Here, the LaRoes argue that "[t]he *Granillo* plaintiffs did not bring the same claims as

those brought in *LaRoe*, so they could not have possibly adequately represent [sic] those claims

at the settlement table." ECF No. 100-1 at 17. Even if true, however, the LaRoes have not met

their burden of demonstrating inadequate representation. The LaRoes have supplied neither

argument nor case law supporting the notion that a class counsel's failure to assert identical

claims in a related class action is an example of adversity of interest, collusion, or nonfeasance.

And this Court cannot envision that the non-identity of claims in both litigations would amount

to inadequate representation. Moreover, the LaRoes have not demonstrated, as previously noted,

*see supra* n. 6, that their claims are not encompassed by the class claims raised here.

Indeed, Potential Intervenors do not dispute their status as absent class members. Rather,

they take issue with the specific provisions of the settlement agreement on "Transmission-

Related Complaints" and the general release provision that is common to most settlement

agreements. In doing so, however, the LaRoes merely argue that there is *a possibility* that these

specific settlement terms could, theoretically, impact their claims in a separate suit. This is not

sufficient to overcome the presumption of adequate representation. *See, e.g., In re Cmty. Bank*,

418 F.3d at 315 (noting that "absent class members who merely express dissatisfaction with

specific aspects of the proposed settlement" do not have right to intervene); *Brennan v. Cmty.*

*Bank, N.A.*, 314 F.R.D. 541, 546 (M.D. Pa. 2016) ("[E]ach of the deficiencies noted by the

Intervenors is simply an objection to a provision or element of the settlement agreement. The

Third Circuit has clearly stated that dissatisfaction with a settlement cannot provide the basis for

granting intervention as of right.").

The case of *Demarco v. Avalonbay Communities, Inc.* is instructive. No. 15-628, 2016

WL 5934704, at *5 (D.N.J. Oct. 12, 2016). There, the parties to a putative class action

concerning a fire in an apartment complex reached a settlement. *Id.* at *1. At the time the

settlement was reached, a separate consolidated state court action made up of lawsuits filed by

twenty putative class members was pending. *Id.* at *2. After plaintiffs filed an unopposed motion

seeking preliminary approval of the settlement, the plaintiffs in the state court action sought to

intervene in the class action "to safeguard their interests" and to ensure the court considered the

effect the settlement would have on the state court action. *Id.* With regard to adequacy of

representation, the court stated,

> To overcome the presumption of adequate representation, the proposed intervenor
> must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the
> part of a party to the suit …
> This Court finds that because the existing Plaintiffs are seeking to maximize their
> economic recovery in the same way as potential intervenors, there is no adversity
> of interest. Any party who is concerned about maintaining claims beyond those in
> this case, like the personal injury claims in the State court, may choose to opt-out
> of the settlement. Indeed, these Proposed Intervenors have already initiated their
> own lawsuits. The existing parties adequately represent the applicants' interests.

*Id.* at *6. As with the proposed intervenors in *DeMarco*, the LaRoes may opt out of the

settlement if they are displeased with its terms, and, in fact, they seem to be have been moving

towards that end by continuing with their own suit. Indeed, as the *Demarco* court noted, "it can

be argued that they are more protected than all other class members" because they "may choose

to opt out of the Class Action Settlement and proceed with the pending suit." *Id.* at *5. While it is

true, as Proposed Intervenors argue, that "[t]he fact that disgruntled class members may opt out

of the settlement class does not cure the deficiencies in the settlement," *Zimmerman v. Zwicker*

*& Assocs., P.C.*, 09-cv-3905, 2011 WL 65912, at *8 (D.N.J. Jan. 10, 2011), here, the Proposed

Settlement does not possess any glaring deficiencies at the preliminary approval stage. The

Proposed Settlement is subject to final approval, so if Proposed Intervenors wish to submit

objections, their opportunity to do so has not run out. Thus, as in *DeMarco*, "the Proposed

Intervenors have failed to demonstrate that, if they are prevented from intervening, their claims will be impaired." 2016 WL 5934704, at \*4.

In arguing that their interests are not, in fact, adequately represented, Proposed Intervenors apply the incorrect standard for intervention in the class action context. According to the LaRoes, no presumption of adequacy exists, so they must only show that the current or future interest of the intervenors and the plaintiff have the *potential* to diverge. But none of the cases they cite applying this standard arose in the context of class actions, where class members are assumed to have the same ultimate objective. *See Pennsylvania Gen. Energy Co., LLC v. Grant Township*, 658 Fed. Appx. 37, 40 (3rd Cir. 2016) (suit by oil and gas company challenging township ordinance); *U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3rd Cir. 2014) (suit by United States under Civil Rights of Institutionalized Persons Act); *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3rd Cir. 1992) (establishment clause suit by high school students against school officials); *Boutros v. Restropo*, 321 F.R.D. 103, 106 (D.N.J. 2017) (personal injury suit); *Clean Earth, Inc. v. Endurance Am. Ins.*, No. 15-6111, 2016 WL 5422063 (D.N.J. 2016) (contractual dispute); *Luciano v. Teachers Ins.*, No. 15-6726, 2016 WL 4107688, at \*3 (D.N.J. July 29, 2016) (although a class action, the intervenor in *Luciano* was not a putative class member).

The cases that Proposed Intervenors cite allowing intervention in the class action context are no more persuasive. These cases deal with 1) class members attempting to intervene into non-opt-out classes in which absent class members' interests are more significantly at risk, *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938 (3rd Cir. 2012), *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877 (7th Cir. 2000); 2) a more permissive, out-of-circuit standard for demonstrating inadequacy of representation, *Ross v. Convergent Outsourcing, Inc.*,

323 F.R.D. 656 (D. Colo. 2018); or 3) a case involving proposed intervenors who were not class members, and could, therefore, not object to the settlement. *Ligas v. Maram*, No. 05-4331, 2010 WL 1418583 (N.D. Ill., Apr. 7, 2010).

Thus, for these reasons, the LaRoes will not be granted leave to intervene as of right.[12]

    2.  Permissive Intervention

Under Federal Rule of Civil Procedure 24(b), the court may grant permissive intervention if the intervenor (1) acts timely and (2) shares a claim or defense to that of the case. Fed. R. Civ. P. 24(b)(1). The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at 24(b)(3). Permissive intervention is completely discretionary, and where a party fails to show that a right to intervene exists, there can be no abuse of discretion in denying permissive intervention. *Brody v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992). Here, for the reasons described above, the LaRoes have not made a convincing showing that intervention would "prejudice the adjudication of their rights." Therefore, the LaRoes will also not be permitted to permissively intervene.

Thus, Proposed Intervenors' Motion to Intervene is denied.

## III.    CONCLUSION

For the foregoing reasons, Consumer Groups' Motion to for Leave to File an Amicus Curiae Brief is **DENIED** and the LaRoes Motion to Intervene is also **DENIED.**

Dated:  September 28, 2018                    /s/ Freda L. Wolfson
                                            Hon. Freda L. Wolfson
                                            United States District Judge

---

[12] Defendant also argues that this Court lacks the power to issue "clarification" on whether the LaRoes' claims would be impacted by the settlement, because to do so would constitute an impermissible advisory opinion. Proposed Intervenors respond that they are merely seeking declaratory relief, and, in the alternative, ask the Court to modify the terms of the of the proposed release. However, as I find that intervention is not proper, I need not reach this issue.