**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                    :

DOLORES GRANILLO, *et al.*,    :
                    :

          Plaintiffs, :     Civil Action No. 16-153 (FLW) (DEA)
                    :

       v.           :
                    :          **OPINION**

FCA US LLC,          :
                    :

                    :

         Defendant.  :
_____ :

### WOLFSON, Chief Judge:

Before the Court is Plaintiffs Dolores and Albert Granillo's ("Plaintiffs") Motion for Attorneys' Fees, Costs/Expenses, and a Class Representative Incentive Award [ECF No. 128]; and Defendant FCA US LLC's ("Defendant") Motion to Strike an Opt-Out Notice filed by Melody and Ronald LaRoe (the "LaRoes") and the accompanying Notice of Appearance by counsel for the LaRoes and Defendant's application for attorneys' fees in connection with the motion to strike [ECF No. 124]. For the reasons that follow, Plaintiffs' Motion for Attorneys' Fees is granted in the amount of $1,200,020, plus their costs of $28,786.83, and a $5,000 incentive award to the named Plaintiffs; Defendant's Motion to Strike is granted; and Defendant's Motion for Attorneys' Fees is denied.

## I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

This class action lawsuit was initially filed by Plaintiffs on July 28, 2015, in California state court, stemming from alleged defects in the automatic transmissions manufactured by Defendant and utilized in Plaintiffs' vehicles.  Defendant removed the case to the district court for the Central District of California on September 30, 2015, then concurrently moved to dismiss the action and/or transfer the case to this District, where an earlier filed class action, *Oquendo v. Chrysler Group LLC* (n/k/a FCA US LLC), No. 15-5056 (D.N.J.), was pending (and subsequently dismissed). ECF No. 128-2, Declaration of Tarek H. Zohdy, Esq. ("Zohdy Decl.")  ¶10.  On January 11, 2016, the matter was transferred to the District of New Jersey, and FCA US refiled its Motion to Dismiss on January 21, 2016.  *Id.*  This Court granted the motion in part, with leave to amend the complaint. The parties agreed to stay the action and engage in mediation.  *Id.* at ¶11.

On September 26, 2017, after substantial discovery and multiple mediation sessions, the Parties reached an agreement to settle the litigation.  *Id.* at ¶16.  This Court preliminarily approved the settlement on September 28, 2018.  *See* ECF No. 118.

Pursuant to the settlement agreement, Class Members[1] who can demonstrate three (3) or more "Transmission  Related Complaints made prior to the Notice Date are eligible to receive, at the Class Member's election, either (1) a cash payment from FCA US, or (2) a  trade-in voucher to be used toward the purchase of a new FCA US vehicle." ECF No. 115, Settlement Agreement ¶ III(A).  The amount of compensation is to be determined

---

[1] All capitalized terms utilized but not defined in this opinion have the same definition utilized in the settlement agreement.

based on the number of transmission related complaints made by the class member, with the maximum amount capped at $2,000 in cash or a trade-in voucher valued at $4,000. *Id*. Furthermore, Defendant agreed to extend the warranty on the transmissions in the Class Vehicles 6 years or 100,000 miles on the odometer, whichever occurs first, calculated from the date the vehicle was first delivered. *Id*. at ¶ III(B). The final settlement agreement also provides for an attorney fee award, totaling no more than $1,260,000, including a $5,000 incentive award to the named Plaintiffs. *Id*. at ¶ VIII.

During the time period for Class Members to elect to opt-out of the settlement, Ronald and Melody LaRoe (the "LaRoes"), putative class members, whose motion to intervene this Court previously denied, filed an "Opt-Out Notice" (ECF No. 123) and an entry of appearance by counsel (ECF No. 122) on December 28, 2018. Defendant filed a motion seeking to strike the LaRoes' filings. *See* ECF No. 124. Additionally, Defendant seeks reimbursement of its attorneys' fees, costs, and expenses in connection with filing the motion to strike, pursuant to 28 U.S.C. § 1927.

Before the settlement received final approval, Plaintiffs filed a motion seeking an award of attorneys' fees, costs, and expenses totaling $1,255,00, plus a $5,000 class incentive award to the named Plaintiffs. ECF No. 128. Defendant did not formally oppose Plaintiffs' motion, but identified certain factual discrepancies involving the hours included in Plaintiffs' fee application. ECF No. 131, Def. Fee Br. On February 13, 2019, this Court conducted the final settlement approval hearing and thereafter, on April 14, 2019, entered an Order granting final approval of the class action settlement and directed Plaintiffs to submit supplemental briefing concerning the reasonableness of counsel's hourly rates, the

hours billed to the litigation along with a summary of the tasks performed, the requested contingent risk multiplier, and the costs/expenses incurred. I reserved judgment on the fee application pending receipt of the briefing. *See* ECF No. 143.

## II.    PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The awarding of fees is left to the discretion of the Court., however, the Court must "apply the proper legal standard" and "follow the proper procedures in making the determination." *In re Cendant Corp. Prides Litig*., 243 F.3d 722, 727 (3d Cir. 2001)(quoting *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995).

Here, Plaintiffs seek to recover attorneys' fees and costs/expenses of $1,255,000 on behalf of Class Counsel Capstone Law APC ("Capstone Law") and co-Class Counsel the Law Offices of Howard A. Gutman ("Gutman Law") (collectively, "Class Counsel"). Plaintiffs also move for an incentive award of $5,000 to Dolores and Albert Granillo for their service on behalf of the class. As part of the settlement agreement, Defendant agreed not to object to an award of attorneys' fees, costs, and incentive award totaling no more than $1,260,000, including a $5,000 incentive award to Dolores and Albert Granillo. Settlement Agreement at ¶ VIII. Nonetheless, this Court has an independent obligation to thoroughly analyze the reasonableness of Plaintiffs' fee application. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005); *Yong Soon Oh v. AT&T Corp.,* 225 F.R.D. 142, 146 (D.N.J. 2004).

However, one important consideration in this Court's analysis is the nature of the settlement agreement, and the provision that any award of attorneys' fees and costs is wholly separate and apart from the relief provided for the Settlement Class; thus relief will not be reduced by an award of the fees. Notably, the Supreme Court has recognized a preference for allowing litigants to resolve fee issues through agreement, stating "[a] request for attorney[s'] fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Attorneys' fees are typically assessed through either the percentage-of-recovery method or the lodestar method. *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-recovery method devotes a certain percentage of the settlement fund to attorneys' fees. *See In Re Cendant*, 243 F.3d at 732 n.10. The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services. *In re AT&T*, 455 F.3d at 164. A court, when approving a fee award, must first categorize the action it is adjudicating and then "primarily rely on the corresponding method of awarding fees." *In re GM Trucks Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

In this case, the lodestar method is the appropriate method for awarding fees. The lodestar method "has appeal where . . . the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 590 (D.N.J. 2010) (citations omitted), *rev'd on other grounds*, *Dewey v. Volkswagen Aktiengesellscahft*, 681 F.3d 170 (3d Cir. 2012). It is "designed to reward

counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Cendant Corp. Prides Litig.*, 243 F.3d at 732 (quoting *Krell v. Prudential Ins. Co. of Am. (In re Prudential),* 148 F.3d 283,333 (1998)).

Here, the settlement benefits are not derived from a set pool of funds, and no specific monetary figure has been set aside to provide relief to the Class Members. Instead, the total amount of the settlement will be determined by whether individual members of the class elect to receive a cash payment or a trade-in voucher from Defendant, and the number of transmission related events suffered by each claimant. Because the benefits, like those offered in other class action settlements against automobile manufacturers, are not derived from a common fund and, at this juncture, cannot be calculated precisely, the Court finds that a lodestar method is appropriate. *See*, *e.g.*, *Saini*, 2015 WL 2448846, at *15 (applying the lodestar method in an automobile defect settlement where the settlement did not create a common fund and the nature of the benefits evades mathematical precision); *Skeen v. BMW of North America, LLC*, No. 13-1531 (WHW), 2016 WL 4033969, *18 (D.N.J. July 26, 2016) (applying the lodestar method in an automotive defect settlement where settlement lacked a common fund and included both monetary and non- monetary benefits, but monetary benefits could not be calculated until after the final settlement approval hearing); *Henderson*, 2013 WL 1192479 at *40-58 (applying the lodestar method in an automotive defect settlement that offered reimbursement of out-of- pocket costs and software upgrades).

### A. Lodestar

Under the lodestar analysis, attorneys' fees are determined by multiplying the number of hours reasonably spent litigating the matter by counsel's hourly rate. This yields the presumptively reasonable fee. *See Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 310 (3d Cir. 2008); *Washington v. Philadelphia Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir. 1996). The first step is to determine the appropriate hourly rate, based on the attorneys' usual billing rate and the "prevailing market rates in the relevant community." *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir. 1995)(quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Next, the Court must assess whether the billable time was reasonably expended. *Id*. at 1188.

As the Third Circuit has held, in reviewing counsel's lodestar,

> Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

1. <u>Reasonability of Counsel's Rates</u>

"A court determines the lodestar by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199 (3d Cir. 2000). In reviewing the reasonableness of counsel's hourly rate, "[t]he court 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)(quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990)). The burden of establishing the reasonableness of the requested rate is on the applicant, and an attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive. *Maldonado v. Houstoun,* 256 F.3d 181, 184–85 (3d Cir. 2001). Further, courts also consider evidence such as "affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc*., 426 F.3d 694, 703 n.5 (3d Cir. 2005).

Class Counsel billed their time at their current billing rates charged to their clients. Counsel's hourly rates are as follows:

| Firm | Lawyer | Hourly Rate |
|---|---|---|
| | Jordan Lurie | $725 |
| | Raul Perez | $725 |
| | Robert Friedl | $695 |
| | Ryan Wu | $625 |
| | Tarek Zohdy | $525 |
| | Eduardo Santos | $495 |
| | Karen Wallace | $395 |
| | Cody Padgett | $370 |
| | Trisha Monesi | $295 |
| | Jordan Carlson | $295 |
| | Brooke Waldrop | $245 |
| Law Office of Howard A. Gutman | Howard A. Gutman | $525 |

Pl. Br. at 14; *see also* ECF No. 140, Pl. Supp. Br. at 1-2.

In support of the fee application, Class Counsel submitted affidavits referencing other cases in which courts of this district have approved their billing rates, and cases in

which comparable billing rates have been accepted by courts in this District.[2] Furthermore, Counsel's affidavit also invites the Court to consider the Laffey Matrix[3], and contends that the requested rate is "within the parameters set forth by the Laffey Index and similar compilations." ECF No. 140-1, Supplemental Declaration of Howard Gutman ("Gutman Supp. Dec"), ¶2.

I find counsel's rates, ranging from $245 to $725, to fall on the outer end of reasonableness for this geographic area.  Furthermore, at least two other courts within this district have approved class action settlements and fee awards where Capstone charged identical rates.  *See* Order, *Bang v. BMW of North America, LLC*, No. 15-06945, ECF No. 121 (approving rates ranging from $245 to $725 for many of the attorneys in the instant

---

[2] Class Counsel did not submit affidavits from other non-party attorneys with personal knowledge of the hourly rates customarily charged within this district, and instead rely on other district court decisions.  *See Interfaith*, 426 F.3d at 703 n.5. Nor has Class Counsel clarified whether these are their regular hourly rates which they charge to *non-contingent* fee clients.  *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 537 (3d Cir. 1997)("while a reasonable fee is to be calculated according to the prevailing market rates, there is no such thing as a prevailing market rate in contingent litigation. (citation and internal quotation marks omitted)).  While such certifications would be a more appropriate indicator of the customary rates, I find the other district courts' opinions sufficient to meet Class Counsel's burden, in this instance,  particularly since Defendant has not challenged Class Counsel's proffered rates and this case involves an agreed-upon fee which is separate from the relief provided to the settlement class.  Importantly, a court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party.  *Interfaith*, 426 F.3d at 711.

[3] The Laffey Matrix "provides billing rates for attorneys in the Washington, D.C. market with various degrees of experience. " *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 414 (3d Cir. 2013)(internal quotation marks and citation omitted). Because the relevant geographic market in this case is either New Jersey, where the case was litigated, or California, the jurisdiction from which it was transferred,  I decline to consider the Laffey Matrix.

action: Jordan Lurie, Robert Friell, Tarek Zohdy, Cody Padgett, Trisha Monesi, Jordan Carlson, and Brook Waldrop); Order, *Chan v. Porsche Cars North America, Inc.*, No. 15-02106, ECF No. 65 (approving rates from $245 to $695 for Capstone Law attorneys). Additionally, these rates are generally within the range of hourly rates approved in this District in similar class actions. *See Saini*, 2015 WL 2448846, *15 (approving average rates of $421.73 and $540.31 in class action against an automobile manufacturer); *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) (approving rates between $250 and $850 per hour); *In re Schering-Plough/Merck Merger Litig.,* No. 09-1099 (DMC), 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) ("an overall hourly lodestar non-weighted average ranging from $ 465.68 to $ 681.15 is not unreasonable in light of similar rates charged in the market and in light of the usual billing rates documented in counsel's declarations to the Court.").

Since Plaintiffs' proffered rates are comparable to those charged by other firms in similar cases in this District, and Defendant has not lodged an objection to the requested rates, I find them to be reasonable.

2. <u>Reasonability of Counsel's Hours</u>

After determining that the billing rate is reasonable, the Court must decide whether the amount of billable time was reasonably expended." *Windfall*, 51 F.3d at 1188. The time expended by counsel is "reasonable" if it is attributable to " work that is 'useful and of a type ordinarily necessary' in pursuing the litigation." *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 561 (1986)).

At the time of filing their initial motion, in January 2019, Class Counsel had expended a combined total of 2,053.30 hours (304.1 hours by Mr. Gutman of Gutman Law and 1,749.2 hours by the 11 attorneys from Capstone Law) litigating this action, for a total base lodestar of $1,002,008.50. Pl. Br. at 15. Defendant raises two areas of concern involving the factual assertions underlying the supporting certifications and the reasonableness of the hours expended by Class Counsel. *See generally* Def. Fee Br. First, Defendant notes that Jordan Lurie, Esq., from Capstone Law, who was admitted to this Court *pro hac vice*, was temporarily suspended from the practice of law between July 3, 2018 and September 5, 2018, and Class Counsel failed to apprise the Court of his suspension, as required by the Order granting Mr. Lurie's *pro hac* vice admission. *Id*. at ¶1. Second, Defendant noted that Howard Gutman's certification suggested that Mr. Gutman may have incorporated hours expended in litigating the *Oquendo* matter into the instant fee application. *Id.* at ¶2.

At the Court's request, Plaintiffs provided supplemental briefing regarding the hours expended, the reasonableness of counsel's hourly rates, the hours billed to the litigation along with a summary of the tasks performed, the requested contingent risk multiplier; and the costs/expenses incurred. Plaintiffs' revised fee application wrote off certain hours included in the initial fee application, but also incorporated additional time billed after filing the initial fee motion. The additional time was billed between January 9, 2019 and February 22, 2019, in connection with preparing for the final settlement approval hearing and drafting the supplemental briefing regarding the fee application. The inclusion of the

additional time resulted in a net increase of billed hours which, in turn, gave rise to a $98,904 increase in Plaintiffs' base lodestar.

Class Counsel eliminated a total of 110.9 hours from its fee application: approximately 35 hours of time purportedly to "minimize billing inefficiencies (i.e., billing for administrative or ministerial tasks that might otherwise have been performed by staff) and redundancies," 2.2 hours of time billed by Mr. Lurie between July and September 2018, and 73.7 hours relating to work performed by Mr. Gutman regarding the *Oquendo* matter. *See* ECF No. 140-2, Declaration of Mark A. Ozzello, Esq ("Ozzello Dec.") ¶4; Gutman Supp. Dec ¶11. The revised total hours billed through January 8, 2019 is 1,942.48 (230.4 hours by Mr. Gutman of Gutman Law and 1,714.4 hours by the 11 attorneys from Capstone Law). *See* Ozzello Dec. ¶4; Gutman Supp. Dec. ¶11.

The additional time billed between January 9, 2019 and February 22,2019, totaled 291.8 hours (37.5 hours[4] by Mr. Gutman of Gutman Law and 254.3 hours by the 11 attorneys from Capstone Law), which resulted in attorneys' fees of $198,13250. Ozzello Dec. ¶5; Gutman Supp. Dec. ¶13; *see also* Pl. Br. at 17.

---

[4] Mr. Gutman attests that he expended 45.5 hours "preparing for and attending the final hearing, researching issues with [regard to this fee application], and preparing supplemental papers," however, he voluntarily reduced that figure by 8 hours in light of his "limited role" at the final settlement approval hearing, resulting in the 37.5 hour figure. Gutman Supp. Dec. ¶13.

Thus, the cumulative hours expended by Class Counsel at the time of submitting the supplemental briefing on the fee application totals 2,236.6 hours, resulting in a total base lodestar of $1,100,912.5. Pl. Supp. Br. at 15-17.

Plaintiffs have identified the hours billed at each phase of the litigation as follows: 134 hours investigating the claims and defenses in preparation for drafting and filing the complaint, including conducting initial interviews of class members and researching Defendant's awareness of the transmission related issues, Pl. Supp. Br. at 6; 122.1 hours drafting pleadings and miscellaneous court filings, *id*. at 5-6; 83.4 hours drafting and responding to written discovery requests and reviewing 5,000 pages of discovery produced to Defendant, *id*. at 7; 594.2 hours communicating with the 300,000 Class Members before and during the pendency of the case, *id*. at 9-10; 90 hours on case analysis, management, and strategy, including communications with co-counsel; 175 hours engaging in pre-settlement motion practice to oppose the motion to dismiss, *id*. at 11; 688 hours engaging in mediation, settlement, and settlement administration supervision, *id*. at 13; 349 hours on post-settlement motion practice, including, *inter alia*, drafting the motions for preliminary and final approval, reviewing the motion to intervene filed by the LaRoes and Defendant's opposition, reviewing billing and cost records, and attending the final settlement approval hearing, *id*. at 14.

Plaintiffs' supplemental submission resolved many of the concerns raised by Defendant. Defendant's sole remaining objection is Plaintiffs' inclusion of the time billed after the filing of their initial fee motion. Defendant contends that the hours used to

calculate a fee award should not be increased to account for work done after the submission of an attorney's fee motion. ECF No. 141, Def. Supp. Br. 3. In Defendant's view, Plaintiffs' inclusion of the additional hours is merely an "attempt to justify the exact same amount of fees originally requested." *Id*. at 2.

As an initial matter, I find counsel's inclusion of the 291.8 hours expended between January 8, 2019 and February 22, 2019 to be excessive. During that time, Class Counsel was required to supervise the administration of the settlement; draft and file responses to the nineteen objections to the settlement; and travel to, prepare for, and attend the final hearing. Other courts have accounted for time spent preparing for final settlement hearings in approving fee applications. *See, e.g.*, *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 121 n. 6-7 (E.D. Pa. 2005)(approving fee award which included "twelve hours of anticipated time related to the preparation and attendance at the fairness hearing" and "ten hours of anticipated time . . . related to carrying out the terms of the settlement"); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *11 (finding hours expended by counsel to be reasonable and noting that "the time dedicated and expenditures incurred do not include costs that will arise immediately in the future, such as the settlement hearing conducted before this Court"). Counsel should be compensated for the time spent preparing for and participating in the final settlement hearing.

However, a portion of the approximately 300 hours billed between January and February was devoted to supplementing counsel's fee application. Although as a general matter counsel is typically entitled to recover the time spent in preparing and defending a fee application, here, the additional briefing was only necessary because counsel's initial

application was deficient. See *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002)("[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application."). Counsel's initial fee application failed to provide sufficient information regarding the hours billed to the litigation or a thorough description of the tasks performed, inhibiting the Court from engaging in an independent assessment of the reasonableness of the fee award. Because the additional briefing was necessitated by Class Counsel's insufficient submission, I find it appropriate to reduce the fees sought for post-settlement briefing, between January 8, 2019 and February 22, 2019 by ten percent[5]. Class Counsel has averred that a total of 349 hours was spent on post-settlement motion practice, resulting in fees of $198,132.50. *See* Pl. Br. Supp. at 17. Accordingly, that amount is reduced by $19,813.25 to a total of $161,506.00. Thus, Plaintiffs' resulting base lodestar is $1,081,099.28, rather than $1,100,912.5.

After accounting for the reduction in time spent on the supplemental fee briefing, I find that the overall total hours expended by counsel appear to be consistent with comparable cases. Although Class Counsel has not provided the Court with its billing records, a review of the hours expended by counsel at each phase of the litigation does not

---

[5] Counsel has not identified the specific amount of time which was devoted to drafting the supplemental briefing in support of the fee application. Rather, Class Counsel has consolidated the time spent on all "post settlement motion practice", including, *inter alia*, the motion for preliminary approval, the motion for final approval, and the supplemental fee briefing, and averred that approximately 349 hours were dedicated that phase of the litigation. Pl. Supp. Br. at 14, 17. Accordingly, I find that a 10% reduction is a reasonable approximation of the time actually devoted to drafting the initial supplemental brief and reviewing and responding to Defendant's responsive briefing.

suggest that counsel spent an inordinate or disproportionate amount of time on any particular phase. Additionally, Plaintiffs have provided an analysis of the hours expended by counsel in thirteen automobile defect cases of similar duration. *See* Pl. Supp. Br. at 18-22; Ozzello Decl. Ex. 7. The hours expended by Class Counsel in the instant matter fall below the average of approximately 4,800 hours billed by counsel in similar cases.[6] Ultimately, the total hours billed by Class Counsel are reasonable.

3. Lodestar Multiplier

A lodestar multiplier "attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Diet Drugs,* 582 F.3d 524, 540 n. 33 (3rd Cir. 2009). The multiplier is the quotient of the proposed fee award divided by the lodestar amount. *In re Insurance Brokerage Antitrust Litig.,* 579 F.3d 241, 280 (3d Cir. 2009).

Here, Plaintiffs seek to use a 1.11 multiplier[7] to reach the total amount of attorney's fees requested. Pl. Supp. Br. 23. This multiplier is generally in the reasonable range for complex class action cases. *See In re Prudential*, 148 F.3d at 341 ("'[m]ultiples ranging

---

[6] Although the cases identified by counsel are of similar temporal duration, the exhibit delineating the cases does not make clear whether those cases were also settled after the motion to dismiss phase, or if they proceeded to substantive fact discovery prior to settlement, which would, naturally result in a larger attorney fee award. Here, paper discovery was exchanged but there is no indication that any depositions were taken. Nonetheless, considering simply the length of time the cases were pending, the hours billed by Class Counsel appear to be reasonable overall.

[7] Plaintiff's initial fee application utilized a 1.22 multiplier, *see* Pl. Br. at 10, however, in light of the increase in the base lodestar as a result of the inclusion of attorney hours billed in connection with the final settlement approval hearing, Plaintiffs decreased the multiplier to 1.11 to reach the fee amount of $1,255,00, s*ee* Pl. Supp. Br. at 23.

from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, Section 14.03 at 14-5 (3d ed. 1992))). The Third Circuit has recently observed that it has "approved a multiplier of 2.99 in a relatively simple case." *Milliron v. T-Mobile USA Inc.*, 423 F. App'x. 131, 135 (3d Cir. 2011) (citing *In re Cendant Corp. Prides Litig*., 243 F.3d at 742); *see also Henderson,* 2013 WL 1192479 at *16 (approving lodestar multiplier of 1.13 for fees and 1.09 with fees and expenses because these multipliers are "within the range found to be to be acceptable by the Third Circuit and this Court" (citations omitted)); *In re Schering-Plough Corp. Enhance ERISA Litig*., 2010 WL 1257722, at *22  (noting that a 1.6 multiple "is an amount commonly approved by courts of this Circuit," and approving it as reasonable); *McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448, 479 (D.N.J. 2008) (finding a multiplier of almost 2.3 to be reasonable); *McGee v. Cont'l Tire N. Am., Inc.*, No. CIV. 06-6234(GEB), 2009 WL 539893, at *19 (D.N.J. Mar. 4, 2009) (approving a lodestar multiplier of 2.65).  Accordingly, I find a multiplier of 1.11 to be reasonable.

The base lodestar of $1,081,099.28 multiplied by 1.11 results in attorneys' fees of $1,200,020.00.  Thus, Class Counsel is entitled those reasonable attorney's fees.

## B. *Gunter/Prudential* Factors

The Third Circuit "require[s] district courts to clearly set forth their reasoning for fee awards so that [the Circuit Court] will have a sufficient basis to review for abuse of discretion."  *In re Rite Aid Corp.*, 396 F.3d at 301. To that end, the Third Circuit has encouraged district courts to perform a "cross-check" of a fee award using an alternative fee calculation method. *In re General Motors*, 55 F.3d at 820. Thus, after utilizing a

lodestar method to award attorneys' fees, a court should cross-check the proposed fee award using the percentage of recovery method. *Id.* A district court should consider seven factors when analyzing the reasonableness of a fee award in a percentage of recovery case:

> (1) the size of the fund created and the number of persons benefitted;
>
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
>
> (3) the skill and efficiency of the attorneys involved;
>
> (4) the complexity and duration of the litigation;
>
> (5) the risk of nonpayment;
>
> (6) the amount of time devoted to the case by plaintiffs' counsel; and
>
> (7) the awards in similar cases.

*In re Rite Aid Corp.*, 396 F.3d at 301 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). This list is not exhaustive. In *Prudential*, the Third Circuit noted three other factors that may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, *Prudential*, 148 F.3d at 338; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, *id.* at 340; and (3) any "innovative" terms of settlement, *id.* at 339. The fee award reasonableness factors "need not be applied in a formulaic way" because each case is different, "and in certain cases, one factor may outweigh the rest." *Rite Aid*, 396 F.3d at 301 (quoting *Gunter*, 223 F.3d at 195 n.1). The Court may give some of these factors less

weight in evaluating a fee award.  *See In re Cendant*, 264 F.3d at 283; *Prudential*, 148 F.3d at 339.

>    1.   The Fund Is Substantial and Confers a Benefit Upon the Class Members

The first *Gunter* factor  considers the size of the settlement fund  created and the number of class members benefitted.  *Gunter*, 223 F.3d at 195. n .1.

The settlement, in this case, did not create a monetary fund for the class members. Although the settlement provides some monetary benefit to the Class Members, the total amount paid to each class member will depend on the number of transmission related events suffered by the individual, and whether the individual elects to receive a trade-in voucher or a cash payment.  Furthermore, the settlement agreement provides qualifying class members with non-monetary benefits such as an extension of their vehicle warranties. Thus, estimating an approximate value for the settlement proves difficult.

However, other courts have determined the potential value of a settlement involving non-monetary benefits such as automotive warranties by multiplying the total number of vehicles at issue, in this case 314,303, times the estimated value of the extended warranty.  *See e.g.*, *O'Keefe*, 214 F.R.D. at 305 ("We believe that the benefit to the class are most accurately measured by making an estimation of the Extended Coverage Program's market price"); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015) (finding the retail value of the extended warranty to be  "a sensible measure of what the class members gained from free extended coverage").

While neither party has provided a true calculation of the value of the proffered extended warranty, Plaintiff notes that even if the value of the warranty were estimated at a modest cost of $25[8], the total value of the settlement, excluding the trade-in voucher or cash funds offered to class members, would be approximately $7,857,575. Pl. Supp. Br. at 26. Using that figure as a rough estimate for the value of the settlement, Class Counsel's fee of $1,200,020 represents approximately 15% of the "settlement fund." The Third Circuit has recognized that fee percentage-of-recovery fee awards commonly range from 19 percent to 45 percent of the settlement fund. *GM Truck Prods.*, 55 F.3d at 822.

Thus, I find that the settlement conferred a substantial benefit on the settling Class Members, which includes both direct monetary payments or trade in vouchers and an extended warranty. Given the combined value of the extended warranty, the trade-in vouchers and cash payments, and the settlement's benefit was substantial and weighs in favor of approval of the attorneys' fee award.

## 2. Absence of Objections to the Fee Request

Here, Class Counsel has received objections totaling approximately .02% of the total Class Members. As numerous district courts have held, the dearth of objections "strongly supports approval of the requested fee." *In re Flonase Antitrust Litig.*, No. 08-cv-3149, 2013 WL 2915606, at *7 (E.D. Pa. June 14, 2013); *see also In re Schering-Plough Corp.*

---

[8] I find the $25 figure to be a reasonable estimate of the warranty's value. Notably, that estimate falls well below the value of the comparable warranties in both *O'Keefe* and *Volkswagen*. *See O'Keefe*, 214 F.R.D. at 305 (valuing extended warranty at $48.31); *In Re Volkswagen*, 89 F. Supp. 3d at 158 (finding that value of extended warranties provided to class members represented a total value of $73,938,851, approximately $154 per warranty)

*Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *6 (finding the "lack of objections to the requested attorneys' fees supports the request"); *Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009) (stating, in approving fee request, "[i]mportantly, there were no objections").

Of the 19 objections to settlement, only one explicitly referenced fees. *See* ECF No. 128-8*,* Ness Suppl. Decl.; Exhibit B-4 (Phillip G. Hunter) ("Please accept this letter as my further objection to the amount and distribution of the attorney's fees provided by the proposed settlement. Please also consider this a formal request that the fee and expenses of the attorneys for the class be audited as a part of the settlement and any reduction in fee or expenses be distributed equally among members of the class.") The lack of negative feedback after notice suggests that the Class generally and overwhelmingly approved of the settlement.

Thus, this factor weighs in favor of awarding the requested attorneys' fees.

### 3. Class Counsel Prosecuted This Action With Skill And Efficiency

Class Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Hall v. AT&T Mobility LLC*, No. CIV.A. 075325 JLL, 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

The Settlement obtained for the Class Members would not have been achieved without the skill and experience of Class Counsel. Class Counsel are experienced and well versed in consumer class action litigation, and specifically class actions involving

automobile defects. Capstone is one of California's largest plaintiff-only labor and consumer law firms and has successfully obtained final approval of settlements in 13 automobile defect class actions in the past 5 years. Zohdy Decl. ¶3,5. Mr. Gutman is similarly well-versed in litigation of this nature and has "successfully resolved over 500 automobile warranty or consumer fraud claims." Gutman Supp. Decl. ¶6.

In prosecuting this lawsuit, Class Counsel engaged in motion practice, discovery, and multiple mediation sessions. The success of the settlement itself speaks to the skill and efficiency of Class Counsel. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("'the single clearest factor reflecting the quality of class counsel's services to the class are the results obtained'" (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000))).

Moreover, the quality and vigor of opposing counsel is also important in evaluating the services rendered by Class Counsel. *See, e.g., Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels work."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Here, Defendant was represented by able counsel in McElroy, Deutsch, Mulvaney & Carpenter, LLP. Thus, the fact that Class Counsel achieved this Settlement for the Class in the face of formidable legal opposition further evidences the quality of their work, which weighs in favor of approval of the attorneys' fee award.

### 4. The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of the Court's Award

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation" and favors the requested fee. *See In re General Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)).

This complex class action litigation has lasted nearly four years and has required extensive work by Class Counsel (including motion practice, discovery, and multiple mediation sessions) to result in a successful conclusion. Thus, this factor weighs in favor of approval of the attorneys' fee award.

### 5. Class Counsel Undertook the Risk of Non-Payment

Class Counsel faced considerable risk in litigating this case, having advanced all attorney work and costs without any assurance that they will be paid. The uncertainty of this action—including the risk of losing class certification—presents a high contingent risk for Class Counsel, justifying the fee award. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *28. Accordingly, this factor also weighs in favor of the requested fee award.

### 6. Class Counsel Spent Significant Time Investigating and Litigating the Case

The sixth *Gunter* factor looks at the time counsel devoted to the litigation. *Gunter*, 223 F.3d at 199. This factor is usually considered with the lodestar to look at the reasonableness of counsel's requested fee. The Court has reviewed the affidavits in this case and finds the over 2,000 hours spent pursuing this lawsuit on behalf of the Settlement Class to be significant. The hours spent were devoted to work that was necessary to

ultimately settle this matter, including conducting research into the transmission-related issues, investigating Plaintiffs' individual claims, engaging in multiple days of mediation and significant motion practice.

Accordingly, the number of hours devoted by Class Counsel supports the requested fee award.

### 7. The Court's Award Is Consistent with Awards in Similar Cases

In reviewing awards in similar cases, the Court must "(1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market." *Saini*, 2015 WL 2448846, at *18.

An attorney fee award of $1,200,020 falls within the range of fees approved in other consumer class actions in this District. *See*, *e.g.*, *Yaeger v. Subaru of Am., Inc.*, No. 14-4490(JBS), 2016 WL 4547126, at *4 (D.N.J. Aug. 31, 2016) (awarding fees of $1,500,000 in a two-year action alleging an oil consumption defect in the engine); *Skeen*, 2016 WL 4033969, **24-25 (awarding $2,100,000 in attorneys' fees in a three-year class action alleging timing chain defect); *O'Keefe*, 214 F.R.D. at 304 (awarding $4,896,783.00 in fees justified in class action involving allegedly defectively design rear lift-gate latch).

Thus, this factor weighs in favor of approving the fee award.

### B. Class Counsel's Expenses Were Reasonable and Necessary to Litigate the Action

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of

24

the class action." *Careccio v. BMW of N. Am. LLC*, No. 08-2619, 2010 WL 1752347, at *8

(D.N.J. Apr. 29, 2010) (quoting *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp.

2d at 108). In this case, Class Counsel has incurred $28,786.83[9] in expenses for the

common benefit of Class Members, which FCA US agreed to pay separately from the class

relief. *See* Ozello Decl. ¶ 14; Gutman Supp. Decl. ¶ 16. Class Counsel advanced these

necessary out-of-pocket costs without assurance that they would ever be repaid.

I find that these expenses were properly documented and reasonably and

appropriately incurred in litigating this matter.

## C. Plaintiffs are Entitled to an Incentive Award

"Incentive awards are not uncommon in class action litigation and particularly

where . . . a common fund has been created for the benefit of the entire class. The purpose

of these payments is to compensate named plaintiffs for the services they provided and the

risks they incurred during the course of class action litigation, and to reward the public

service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Investments,

Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011) (quotations omitted)

---

[9] Plaintiffs' initial motion included costs of approximately $36, 785.89. *See* Zohdy Decl.
¶15; Gutman Decl. ¶18. However, in drafting its supplemental briefing, Plaintiffs
discovered that its original cost request included an extra $7,632.06 charge because JAMS
erroneously provided Capstone with two different invoices for the same charge. *See*
Ozello Decl. ¶14. Further, Mr. Gutman omitted approximately $367 for various costs
which he determined could have been related to the *Oquendo* matter. Gutman Supp. Decl.
¶16.

Here, Plaintiffs seek an incentive ward in the amount of $5,000 total for the named Plaintiffs Dolores and Albert Granillo. The Granillos jointly spent a significant amount of their own time and expense litigating this case for the benefit of the absent members of the Settlement Class and should be compensated for their efforts. *See* ECF No. 128-4, Declaration of Dolores Granillo ¶¶ 2-10. Plaintiffs communicated about their vehicle problems with their attorneys, searched for and produced documents relevant to their claims in the litigation, and stayed abreast of significant developments in the case, including for mediation and to review the settlement agreement. *Id.* The amount requested is similar to amounts awarded by courts in this District to class representatives in other class action settlements involving automotive manufacturers. *See Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL 1344745, at *23- 24 (D.N.J. Apr. 8, 2011) (approving incentive award payments of $10,000 to each of the named plaintiffs); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 125 (approving incentive awards totaling $85,000 – which amounted to $5,000 to each of the class representatives); *see also Henderson*, 2013 WL 1192479, at *19 (approving incentive awards between $5,000 to $6,000 each of six class representatives). The requested incentive awards are both appropriate and reasonable.

## III.    Defendant's Motion to Strike the LaRoes' Opt-Out Notice and Motion for Attorney's Fees

Defendant has moved to strike the Opt-Out Notice filed by the LaRoes, on the basis that they have failed to comply with the terms of the settlement agreement, which provide that plaintiffs must notify the claims administrator in writing of their decision to opt out of

the settlement; the purported opt-out is truly an objection to the class settlement, and individuals who opt out of a settlement may not object to it; and that by filing the opt-out the LaRoes are merely seeking to side-step this Court's prior order denying their intervention motion. ECF No. 122, Def. Mot to Strike at 5-7. Defendant has also moved to strike the notice of appearance filed by Lisa R. Bouckenooghe, counsel for the LaRoes. *Id*. at 7-8.

The LaRoes contend that that the "the filing of opt-out notices is commonplace in class settlements in this District and in surrounding Districts" and that this Court's order did not expressly preclude plaintiffs from filing their opt-out notices on the docket. ECF No. 129, LaRoe Opp. at 1 (collecting cases). Furthermore, they aver that filing the opt-out notice on the docket was intended only to ensure that they were excluded from the settlement so as to protect their right to pursue their ongoing litigation against Defendants in another district. *Id*. at 3

The case law cited by the LaRoes does not clearly support the proposition that filing opt-out notices on the docket is commonplace. Rather, it is common practice for the optout notices to be sent to the claims administrator, and for the claims administrator to, subsequently, file a list of the plaintiffs who have opted out of the settlement. More importantly, that was the procedure required by this Court's Preliminary Approval Order. *See* ECF No. 118, Order. Specifically, the Order provided "[a]ny Class Member shall have the right to opt out of the Class and the Settlement by mailing or delivering a written request for exclusion to the settlement Administrator" *Id*. at 5. Thus, there was no need for the

LaRoes to file their Opt-Out Notice on the docket. Accordingly, the Court grants Defendant's motion to strike the Opt-Out Notice and Notice of Appearance. Having opted out of the settlement, the LaRoes were not permitted to object to it, to the extent the Opt-Out Notice raised objections to the settlement, the Court declined to consider them during the final settlement approval hearing.[10] *See* Order at 6 ("Any Class Member who submits a timely request for exclusion [from the settlement] may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under the Settlement").

Defendant also seeks an award of attorney's fees against the LaRoes pursuant to 28 U.S.C. § 1927, based on their "unreasonable" and "vexations" filings which "increased the cost of the proceedings." Def. Mot. to Strike at 8. In *LaSalle Nat'l Bank v. First Connecticut Holding Group,* 287 F.3d 279 (3d Cir. 2002), the Third Circuit provided a comprehensive overview of the applicability of § 1927, noting that "[t]he statute thus limits attorney sanctions imposed thereunder to those situations where an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." *Id*. at 288 (*citing In re Prudential,* 278 F.3d at 188). "[S]anctions may not be imposed under §1927 absent a

---

[10] The LaRoes also object to Defendant's characterization of the Opt-Out Notice as an "objection" to the settlement. La Roe Br. at 2. Although the Court declines to consider any objections raised in the Opt-Out Notice, the LaRoes mailed their opt-out to the administrator as required by the settlement agreement, and were accordingly, included amongst the list of plaintiffs who timely opted out of the settlement agreement. *See* ECF No. 143, Ex. A.

finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Id.* at 289 (citations omitted).

I am unpersuaded that the LaRoe's actions warrant a sanction under Section 1927. Although I find counsel's interpretation of the preliminary approval order questionable, there is no evidence suggesting that the LaRoes and their counsel acted in bad faith, rather than out of an earnest desire to protect their rights. Furthermore, Defendant has not proffered any evidence that it attempted to have the LaRoes withdraw their filing, or otherwise sought to resolve the matter, before expending additional effort briefing the instant motion.[11] Thus, Defendant, very well, could have resolved this matter more expediently without resorting to litigation and incurring additional attorney's fees. Assuredly, Defendant's request for attorneys' fees is denied.

## IV.    CONCLUSION

The Court therefore grants Class Counsel's fee request in the amount of $1,200,020, in addition to the reimbursement of cost and expenses in the amount of $28,786.83, and grants Plaintiffs an Incentive Award in the amount of $5,000.00. Defendant's Motion to Strike the LaRoe's Opt-Out Notice and the accompanying Notice of Appearance is Granted and its motion for attorney's fees pursuant to 28 U.S.C. § 1927 is denied.

Dated: August 27, 2019

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief Judge

---

[11] Plaintiff contends, and Defendant has not denied, that "counsel for FCA US, LLC did not even attempt to reach out to Plaintiffs' counsel to discuss a non-litigation remedy to this allegedly improper filing." ECF No. 129, La Roe Opp. at 5.